WINDSOR HILLS IMPROVEMENT ASSOCIATION, INC., ET AL. *v.*
MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 158, October Term, 1949.]

386

388

*Decided May 12, 1950.*

The cause was argued before COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Joseph W. Spector* for the appellants.

*Hamilton O'Dunne, Assistant City Solicitor of Baltimore,* with whom was *Thomas N. Biddison, City Solicitor,* on the brief, for the appellee, the Mayor and City Council of Baltimore.

*Wilfred T. McQuaid,* with whom was *William Taft Feldman* on brief, for the appellee, Westchester Apartments, Inc.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order entered October 14, 1949, modifying, and affirming as modified, a decision of the Board of Municipal and Zoning Appeals on May 24, 1949, which approved a permit for the construction by Westchester Apartments, Inc. of three apartment houses at specified locations on Westchester Road and Talbot Road. On June 20, 1949 Windsor Hills Improvement Association, Inc. (which is said to have been incorporated on May 26, 1949) filed a petition for appeal from the decision of the Board. Code, Art. 66B, Sec. 7; Zoning Ordinance [No. 1247], paragraph 35(a). On August 26, 1949 Bernard Kairys, a taxpayer, (president of the Association) was granted leave to intervene as a party plaintiff in the appeal proceedings. The Association and Kairys have appealed to this court.

The petition for appeal alleges that the decision of the Board "is not in conformity with good zoning, is illegal, and further because": It is in violation of (A) "Ordinance No. 305, requiring off-street automobile parking space to be provided for in the construction or erection of new buildings"; (B) "Ordinance No. 583, relating to the construction of garden type apartments on a lot, under certain conditions"; (C) "Zoning Ordinance No. 1247, approved March 30, 1931, as to the following paragraph; (1) Paragraph 21. (2) Paragraph 22. (3) Paragraph 28. (4) Paragraph 32, etc." Much of the petition and of appellants' brief is devoted to allegations that the Board's decision "is not in conformity with good zoning" and the proposed construction "is not in conformity with the surrounding architectural design of the neighborhood." Such allegations are no concern of the courts, which can review only the question whether the Board's decision is illegal. Appellants' contentions as to illegality of the Board's decision are contrary to our decisions in *Akers v. Mayor and City Council of Baltimore,* 179 Md. 448, 20 A. 2d 181 and more recent cases or are on their face groundless; most of them

are only faintly, if at all, disclosed in "the grounds of the illegality specified" in the petition for appeal.

The proposed apartment houses are commonly known as "garden type apartments". After our decision in *Norwood Heights Improvement Ass'n v. Mayor and City Council of Baltimore,* 191 Md. 155, 60 A. 2d 192, Ordinance No. 583, approved February 9, 1949, added to Paragraph 28 of Ordinance No. 1247 Sub-paragraph L, which permits garden type apartments "without providing a separate lot for each structure or building; * * * provided the area of such project shall cover at least five acres of land." Appellants contend that Ordinance No. 583 is violated because the project now in question covers less than five acres. As Judge Niles says, there is no violation of Ordinance No. 583. "Ordinance No. 583, now Sub-paragraph L of Paragraph 28 of Zoning Ordinance No. 1247, refers to garden type apartments covering at least five acres of land. This proposed project does not cover five acres of land. Therefore, * * * Sub-par. L has no application to this project at all". Separate lots are provided for each of the three buildings, in accordance with the Zoning Ordinance before the passage of Ordinance No. 583 and with our decisions in the *Akers* case and the first *Norwood* case, *supra.*

This project comprises erection of three apartment houses, to contain nine units in all, to house forty-five [as originally proposed, forty-eight] families. Appellants' basic contention is one which was made, and upon full consideration was rejected, in the *Akers* case, *viz.,* that each of the nine units is to be taken as a single building and the project therefore is to be considered as comprising the erection of nine buildings, which are not parts of apartment houses but are row houses or the equivalent thereof. In the opinion, by Chief Judge Bond, in the *Akers* case, 179 Md. at pages 450-452, 20 A. 2d 182-183, the resemblances of garden type apartments to row houses and to more familiar apartment houses are concisely compared, and the question of classification is found to be close if structural resem-

blances only were regarded, but clear when intended singleness in use and operation, and ownership, is considered. Appellants attempt to distinguish the *Akers* case on the facts, *e.g.*, in that case, "These units were planned to overlap and connect at the corners, leaving them separate fronts, sides and backs, except for the corner connections, where the foundation walls and roofs are to be continuous". 179 Md. 451, 20 A. 2d 182. In the instant case it is said that the units do not "connect at the corners", but are connected—and separated—at the sides by a solid wall, and that the roof lines are, for sake of appearance, broken. By the latter test presumably the House of the Seven Gables would be not one house but several. The former difference resembles the difference between two directly adjoining squares on a checkerboard and two diagonally adjoining squares actually used on the same board. We think that these and other structural differences are insignificant and that in intended singleness of use and operation, and ownership, this case and the *Akers* case are undistinguishable. Without repeating what was said in the *Akers* case or what is well said by Judge Niles in this case, we agree with him that "there is no similarity to row houses which would support the contention of the appellants".

Ordinance No. 305, approved June 14, 1948, provides that in an E area district there shall be provided for each family in a project one parking space "in the building or buildings, or on land not over three hundred (300) feet from the proposed dwelling unit structure". Appellants contend that Ordinance No. 305 is violated (1) because no such off-street parking space is provided on one of these three lots though within 300 feet such space is provided on an adjoining lot, sufficient for both lots and (2) that such parking space cannot be regarded as "open" or "unoccupied" space in computing area, yard spaces and density under the Zoning Ordinance. The latter contention was made and rejected in the *Akers* case. 179 Md. 452-453, 20 A. 2d 183. Appellants would distinguish the *Akers* case because provision of off-street

parking space was not then required by law. Whether or not parking space is "open" space does not depend upon whether such space is provided by choice or by legal requirement. Nothing in Ordinance No. 305 requires that the parking space be provided on the same lot as the building or on any "lot". In this respect this case is unlike the first *Norwood* case.

In this case, as in the *Akers* case, we think the intended singleness in use and operation, and also in ownership, of each of the three buildings is clear. In the first *Norwood* case in construing the Zoning Ordinance, we mentioned the possibility of separation of ownership, but said, "* * * if because of voluntary, or even forced sale by reason of financial difficulties, the buildings in the project hereafter become separately owned and changes in lines then become necessary, that will be the owner's problem, as it should be." 191 Md. 162, 60 A. 2d 195. Zoning laws ordinarily restrict use, not alienation, of land. We need not now undertake to say how far, if at all, zoning for singleness in use and ownership may operate to restrict alienation, or how zoning for singleness in use may be enforced after singleness in ownership may have been destroyed.

In the lower court the only question that Judge Niles considered serious was whether Westchester had committed itself to deed a ten-foot strip of land and a five-foot strip to widen Westchester and Talbot Roads respectively and had thereby so decreased the area of its own land as to fall short of the density requirements of the Zoning Ordinance. Deduction of the two strips does not impair compliance with area and yard space requirements. After argument below Westchester consented to deduction of the two strips and modification of its application so as to reduce the number of families from 22 to 21 in one building and from 26 to 24 in the other two. Judge Niles accordingly modified the Board's decision and conditioned affirmance of it. Appellants now complain that the court failed to designate from which building or lot the reduction from 26 to 24 apartments

was to be made. There is no need for the court to make such clerical or professional adjustment of plans. In the *Akers* case "the owners agree[d] to make provision for the widening" of two highways; "so that the plans can be considered as modified to that extent". Reduction of area reduced the number of families permitted from 28 to 20 and necessitated front yard changes. "The adjustment is not shown, but with the proffer adjustment of the plans made there is no room for disapproval and restraint of the project because of the need of it." 179 Md. 453, 20 A. 2d 184.

Appellants complain of rejection of proffers of additional testimony in the lower court. As the proffers related only to the matter of the two strips of land, they cannot now in any aspect be material.

Before application for a building permit, Westchester's street and subdivision plan was approved by the Planning Commission, "as to street and subdivision plan only subject to the requirements of the Department of Public Works and the Planning Commission." Baltimore Charter (1949 Ed.), Secs. 118-119. Nevertheless appellants contend that in so approving the plan, the Commission exceeded its authority, that wider streets should have been provided, and that area, yard space and density requirements of the Zoning Ordinance are violated if proper deduction is made for proper streets. If we assume that, generally speaking, the Board has no power to authorize or permit violations of law, it is none the less clear that it has no power to review the legality of the acts of the Planning Commission. *Cf.*, Charter, sec. 120; *Akers v. Mayor and City Council of Baltimore, supra,* 179 Md. 453-454, 20 A. 2d 183-184. The Board could not, by usurping the Commission's powers, reversing the Commission's approval and regarding Westchester's plan as to streets as modified accordingly, find a violation of the Zoning Ordinance. Furthermore, this attack on the action of the Commission is not remotely suggested in the "grounds of illegality specified" in the petition for appeal.

The Association in its petition for appeal, "on its behalf and on behalf of protesting residents and any other persons aggrieved and interested in the * * * matter * * *" says it "represents taxpayers and property owners" near the property in question. In the lower court Westchester denied that the Association had any interest in the Board's decision because (A) it was not in existence at the time of the decision and (B) it is not a "person aggrieved" or a taxpayer, and moved to rescind leave to Kairys to intervene, because he was too late. The lower court in effect overruled these objections or treated them as "waived" in the interest of a prompt decision on the merits. In this court Westchester moved to dismiss the appeal for the same reasons. As to the Association the motion must be granted. *Norwood Heights Improvement Ass'n v. Mayor and City Council of Baltimore*, 195 Md. 1, 8, 72 A. 2d 1, 4; *Same v. Same*, 195 Md. 368, 73 A. 2d 529. A corporation is not sufficiently "interested" to sue, or "aggrieved" to appeal, merely because its members are "interested" or "aggrieved". *Dvorine v. Castleberg Jewelry Corporation*, 170 Md. 661, 185 A. 562; *Maryland Naturopathic Ass'n v. Kloman*, 191 Md. 626, 62 A. 2d 538; *Crider v. Cullen*, 191 Md. 723, 63 A. 2d 618. Either a "person aggrieved" or a taxpayer may appeal. The Association is neither. On the record Kairys is a taxpayer and a party in the lower court and therefore entitled to appeal to this court. We think, however, that his petition for intervention after expiration of the time for appeal could not validate the Association's attempt to appeal and should have been denied. The right to appeal is conferred by statute and cannot be created by waiver when it is not exercised in accordance with the statute. Nor do we mean, by discussing questions of illegality in this opinion, to sanction disregard of the statutory requirement of "specifying the grounds of the illegality" in the petition for appeal, or to weaken or qualify what we have so recently said on this subject in the second and third *Norwood* cases. *Norwood Heights Improvement Ass'n v. Mayor*

*and City Council of Baltimore,* 195 Md. 1, 6, 72 A. 2d 1, 3;
*Same v. Same,* 195 Md. 368, 73 A. 2d 529.

Appellants' last—and perhaps least—complaint is that
the lower court imposed costs on Westchester alone and
not on the City. There was no legal obligation to impose
costs on the City and no abuse of discretion in not doing
so. If the appeal proceedings had been dismissed, as
they properly might have been, costs might properly
have been imposed on appellants.

*Appeal dismissed as to the Association;*
*order affirmed as to Kairys; costs to*
*be paid by appellants.*