602 A.2d 233

Patricia A. BENNING, et al.,

v.

**ALLSTATE INSURANCE COMPANY.**

**No. 818, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

March 2, 1992.

David M. Kopstein (Dross & Levenstein, on the brief), Washington, D.C., for appellant Benning.

Pamela J. Mooney, pro se.

Mary S. Akerley (Sasscer, Clagett & Bucher, on the brief), Upper Marlboro, for appellee.

Argued before WILNER, C.J., and CATHELL and MOTZ, JJ.

WILNER, Chief Judge.

On February 4, 1989, Patricia Benning, while a passenger in a car being driven by her sister Pamela, was severely injured when the car went out of control and hit a pole. Pamela was insured at the time under a policy issued by Allstate Insurance Company. The policy provided coverage for bodily injury claims up to $100,000 but contained a partial "household exclusion," which limited coverage to $20,000 for bodily injury claims made by "any person related to an insured person ... and residing in that person's household." Residence was defined in the policy as "the physical presence in *your* household *with the intention to continue living there.*" ("your" emphasized in original; other emphasis supplied.)

Through counsel, Patricia informed Allstate that she was asserting a claim against Pamela. Allstate, apparently, did not contest that the accident was covered under the policy or that Patricia's injuries would support a claim for more than $20,000. Because at the time of the accident Patricia was living in the same home as Pamela, however, Allstate took the position that the household exclusion applied; it offered to settle the claim for $20,000. Contending that she was but a temporary resident in Pamela's home and did not, at the time of the accident, intend to continue living there, Patricia rejected both Allstate's position that the household exclusion applied and its offer. Instead of rushing to sue her sister, however, Patricia filed suit against Allstate in the Circuit Court for Charles County seeking a declaratory judgment that the household exclusion did not apply to her and that the policy therefore covered her claim up to $100,000. That suit was filed on July 18, 1990.

After an exchange of discovery focusing on Patricia's living arrangements, Allstate, on March 22, 1991, moved for summary judgment, or, in the alternative, for dismissal, principally on the basis that Patricia had no standing to bring the action. That defense was based on *Butler v. Liberty Mut. Ins. Co.*, 36 Md.App. 684, 375 A.2d 576 (1977), where we concluded that a declaratory judgment action will

not lie by a claimant against an alleged tortfeasor's insurer to resolve a dispute as to the tortfeasor's coverage until the claimant has obtained a judgment against the tortfeasor.

On April 8, 1991, eighteen days prior to the date scheduled for trial of the action, Pamela filed a motion to intervene in the case, asserting, among other things, that she wanted Allstate to compensate her sister but did not want to be sued by her. She did not concede, either in her motion or in the proposed complaint attached to her motion, that she was negligent or otherwise responsible for the accident or would have any liability to her sister. Pamela supported Patricia's assertion that the household exclusion in the policy did not apply. Concomitantly, Patricia responded to Allstate's motion, contending that Pamela's intervention would "cure" the standing problem and that, if Pamela were allowed to intervene, Patricia could remain in the case "as a co-plaintiff."

The complaint, Allstate's motion, and Pamela's motion to intervene all came before the court on April 26, 1991, the previously scheduled trial date. Although Pamela asked the court to deal with her motion first, the court began (and ended) with Allstate's motion. After hearing argument, including a concession by Patricia that the motion was well-founded and that, had Patricia known of the *Butler* case, she never would have brought the action, the court granted the motion. The effect of that was to put Patricia, the only plaintiff then in the case, out of court. The court then decided that it did not need to address Pamela's motion because there was no case pending in which she could intervene. Both Patricia and Pamela have appealed.

### Patricia's Appeal

Patricia acknowledges in her brief that the judgment entered with respect to her was correct. She concedes that her case is controlled by *Butler*, and she tells us that the soundness of that decision "is not now being questioned." The law is clear that the right to appeal may be lost by "acquiescence in, or recognition of, the validity of the

decision below from which the appeal is taken. . . ." *Fran-zen v. Dubinok*, 290 Md. 65, 68, 427 A.2d 1002 (1981), quoting from *Rocks v. Brosius*, 241 Md. 612, 630, 217 A.2d 531 (1966). That is certainly the case here. We shall therefore dismiss Patricia's appeal.

### Pamela's Appeal

■ Pamela's appeal stands in a different posture. The effect of the court's failure to address her motion to intervene was a denial of the motion. Denial of intervention, whether claimed as of right or as permissive, is an appealable final order. *Maryland Life & Health Ins. v. Perrott*, 301 Md. 78, 87, 482 A.2d 9 (1984). Her appeal, therefore, is a procedurally proper one.

■ As we indicated, the court declined to address Pamela's motion on the ground that, having dismissed Patricia's complaint, there was no pending action in which Pamela could intervene. Technically, of course, that was correct, but it does not end the inquiry. It simply recasts the issue as whether the court abused its discretion in addressing Allstate's motion to dismiss Patricia's complaint before considering Pamela's motion to intervene.

■ The Maryland Rules are designed, and are directed to be construed, "to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay." Md.Rule 1–201(a). Those objectives, we believe, must also govern the exercise of the court's discretion in dealing generally with proceedings before it. The effect of the procedure used by the court here was to deny Pamela's motion whether or not it had merit and to force her, if she chose to pursue her action against Allstate, to file another lawsuit with all of the cost, delay, and inconvenience attending that course.[1] We see absolutely no virtue in

---

1. There is an undeveloped hint in one of the court's remarks that it may have believed that Pamela also had no standing to bring a declaratory judgment action to resolve the dispute as to her coverage in advance of a judgment exceeding $20,000 being rendered against

that approach, only mischief. If the court believed that Pamela did not meet the standards for either mandatory or permissive intervention under Md.Rule 2–214, it should have so ruled and denied her motion on that basis. If, on the other hand, Pamela *did* meet the standards for intervention and should have been made a party-plaintiff, then the procedure used became simply a device to deny her a right to which she was entitled. In either event, the procedure chosen secured neither simplicity in procedure, fairness in administration, nor the elimination of unjustifiable expense and delay; indeed, it achieved quite the opposite. We therefore conclude that the court abused its discretion in failing to address Pamela's motion to intervene before acting upon Allstate's motion to dismiss Patricia's complaint.

We turn then to consider whether the motion was one that should or could have been granted.

■ Intervention is dealt with in Md.Rule 2–214. Both § (a) of the Rule, dealing with intervention as of right, and § (b), dealing with permissive intervention, allow intervention only upon "timely motion." Allstate's first defense to Pamela's motion was that it was untimely. It was filed eight and a half months after the initial complaint, after discovery had been completed between Allstate and Patricia, and only 18 days before scheduled trial. As Allstate pointed out, Pamela and Patricia resided in the same household, and so no claim could be made (or was made) that Pamela was unaware of the action. On the other hand, Patricia, supporting Pamela's motion, noted that Pamela's intervention would "cure" the standing problem asserted by Allstate with respect to Patricia's complaint and that:

---

her. For the reasons we shall shortly explain, that would not be a correct view of the law. In any event, it seems clear that the court did not deny the motion on the ground that it had no merit but simply regarded the motion as moot in light of its dismissal of Patricia's complaint.

"It is important to note that Allstate has already conceded that Pamela was negligent and has further conceded that Patricia's medical expenses alone exceeded $20,000. Therefore, regardless of what other defenses Allstate might raise on Pamela's behalf in a tort suit, it is clear that the major obstacle to the settlement of Patricia's claim against Pamela is the resolution of the dispute regarding Pamela's coverage. In all likelihood, the substantial expenditure of the resources of the Court and of the parties that would be necessitated by a tort suit can be avoided by a prior resolution of the coverage dispute."

In *Montgomery Co. v. Ian Corp.*, 282 Md. 459, 465, 385 A.2d 80 (1978), the Court decided that the timeliness requirement in the Maryland Rule should be construed and applied in accordance with the standards announced for the analogous Fed.Rule Civ.Proc. 24 in *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973), to wit:

"If [the motion] is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness. Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review."

*See also Hartford Ins. Co. v. Birdsong*, 69 Md.App. 615, 623–26, 519 A.2d 219 (1987).

As we pointed out in *Birdsong*, timeliness is a threshold issue that must be resolved before considering the merits of the motion. Clearly, the Circuit Court did not resolve that question. Because a ruling on timeliness is a discretionary call with the circuit court, we would, ordinarily, remand the matter for the court to exercise its discretion. Here, however, the circumstances are such that a denial of the motion as untimely would be regarded by us as an abuse of

discretion. We therefore conclude, as a matter of law, that, in the circumstances before us, the motion was timely.

In making that determination, we are aware of the amount of time that lapsed between the filing of the action and Pamela's attempt to intervene in it. We are also aware that Pamela was no doubt aware of Patricia's complaint from the beginning and that the motion to intervene was filed only 18 days prior to scheduled trial. On the other hand, as Pamela informed the court, her motion was intended to "cure" Patricia's standing problem, which did not surface in the case until raised in Allstate's motion for summary judgment, filed 17 days before the motion to intervene. The issue to be tried was a single one: whether a trier of fact could conclude that Patricia's residence in Pamela's home was temporary in nature and not intended to be permanent and that, as a result, the household exclusion did not apply to her. The court did not inquire whether Pamela would have been willing to proceed to trial on that issue without further discovery or delay, and so the record is silent on that matter. At oral argument before us, however, it was proffered without contradiction that Pamela was prepared to proceed with trial that day, that all witnesses needed by either side to testify as to Patricia's living arrangements were in court, and that the case could have proceeded without any delay. In other words, neither Patricia nor Allstate would have been prejudiced in any way by allowing the intervention.

Because we conclude that the motion was timely, we next turn to whether it should have been granted, i.e., whether Pamela, herself, has standing to seek a declaratory judgment as to her coverage under the policy in advance of a judgment in favor of, or a suit filed by, Patricia.

In *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975), the Court addressed the issue of whether a declaratory judgment action between an insured and his or her insurer to resolve disputes over coverage is appropriate

in advance of resolving the underlying claim that gives rise to the dispute. At 405, 347 A.2d 842, it held:

"A declaratory judgment action prior to the trial of a tort action against the insured may under some circumstances be a valuable means of resolving questions of policy coverage where those questions are independent and separable from the claims asserted in a pending suit by an injured third party. An early resolution could avoid unnecessary expense and delay to the parties. Thus, where an insurance company claims lack of coverage because of the insured's failure to comply with contract provisions such as the cooperation or notification clause, or failure to pay premiums, a declaratory judgment would ordinarily be appropriate and should be granted."

Those examples were obviously not intended to be an exhaustive list, as later cases extended that principle to disputes over policy language and the interpretation of policy exclusions. *See Allstate Ins. Co. v. Atwood*, 319 Md. 247, 252, 572 A.2d 154 (1990) and cases cited there. The basic distinction drawn in *Brohawn* and followed in the later cases is between disputes that are also at issue and will necessarily be decided in any underlying litigation between the claimant and the insured and those that are entirely independent of that litigation. *See Brohawn*, 276 Md. at 406, 347 A.2d 842. It is the former that are inappropriate for resolution in advance through declaratory judgment proceedings, for the reasons stated in *Brohawn*.

We have no difficulty in concluding that the coverage dispute here falls within the latter category. Whether the household exclusion applies to Patricia would not be an issue in any underlying litigation between her and Pamela. That issue depends entirely on the circumstances of Patricia's residence in Pamela's home and the proper construction of the policy language, and not on any fact or circumstance pertaining to the accident or the injuries suffered by Patricia.

■ This takes us, finally, to Allstate's claim that Pamela's action is premature because no suit had yet been filed against her by Patricia.[2] Citing *Mraz v. American Universal Ins. Co.*, 616 F.Supp. 1173, 1181 (D.Md.1985), *rev'd on other grounds, sub nom. Mraz v. Canadian Universal Ins. Co.*, 804 F.2d 1325 (4th Cir.1986), it contends that Patricia "could not have the requisite controversy with Allstate 'until there was actually a claim against [her] which [Allstate] declined to defend.' " This contention is based, at least in part, on the proposition that, "until [Pamela] is sued, Allstate has no duty to settle."

In the first place, *Mraz* has no application to this case. The passage relied upon by Allstate concerned a dispute as to whether the insurer was obliged to defend its insured. The court merely confirmed that, in that setting, a declaratory judgment action could not be brought "until there was actually a claim against [the insured] which [the insurer] declined to defend." 616 F.Supp. at 1181. We are not dealing here with a dispute over Allstate's obligation to defend; it has conceded that duty.

As Appleman points out, "courts do not sit to decide more abstract questions of law, but to settle the legal rights of litigants." 20 Appleman, *Insurance Law and Practice* § 11353. Thus, to warrant declaratory relief, there must be a justiciable controversy, "rather than a hypothetical set of facts calling for an advisory opinion." *Id.* But, Appleman continues

"Where there is a concrete, contested issue, a definite assertion of legal rights, and a positive denial of them, there is a justiciable controversy. There need not always be a fully developed controversy, but some act of the defendant must be sufficiently definite to constitute a genuine threat to the plaintiff's interests, and the plain-

---

**2.** At oral argument, we were informed that such a suit has now been filed.

tiff must show that the facts are sufficiently complete to warrant a grant of judicial relief."

*Id.*

This is consistent with the view expressed by the Supreme Court in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), that declaratory judgment actions are appropriate if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." It is also consistent with the Maryland Declaratory Judgments Act. Md.Ann.Code Cts. & Jud.Proc. art., § 3–409 permits a declaratory judgment in a civil case

"if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if: (1) An actual controversy exists between contending parties; (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it."

*See Liss v. Goodman,* 224 Md. 173, 167 A.2d 123 (1960).

Although it is true that in most cases where a liability insurer or its insured attempts to resolve coverage disputes through a declaratory judgment action, there is, in fact, a tort action pending against the insured, we know of no law making such an action a prerequisite. Indeed, the principles noted above, especially the provision in § 3–409 speaking of "imminent and inevitable litigation," strongly indicate that an existing action is *not* a prerequisite. Other courts have so held. *See Pilot Title Insurance Co. v. Northwestern Bank,* 11 N.C.App. 444, 181 S.E.2d 799, 802–03 (1971): "[J]urisdiction lies where the court is convinced that litigation, sooner or later, appears to be unavoidable." *See also United States Aviex Co. v. Travelers Ins. Co.,* 125 Mich.App. 579, 336 N.W.2d 838 (1983).

Whether Allstate actually has a duty to settle a claim prior to the filing of suit is an open question in Maryland, but it is not particularly relevant in the case at bar. On the one hand, Maryland cases holding that an insurer has a duty to proceed in good faith and may be liable for refusing, in bad faith, to settle within policy limits, speak of a duty to settle "claims," not lawsuits. *See State Farm v. White*, 248 Md. 324, 236 A.2d 269 (1967); *Fireman's Fund v. Continental Ins. Co.*, 308 Md. 315, 519 A.2d 202 (1987). Courts elsewhere seem to be divided on whether an insurer has a duty to *initiate* settlement negotiations prior to the filing of suit (*see* discussion in *Morrell Const., Inc. v. Home Ins. Co.*, 920 F.2d 576, 580–81 (9th Cir.1990)), but the issue here is not whether Allstate should initiate settlement negotiations. It has already done so. The question is whether its exposure is $100,000 or only $20,000. That uncertainty is what may well be impeding settlement. At the very least, whatever may be Allstate's desires and intentions, the resolution of that uncertainty is critical to Pamela's decision whether to press for settlement of Patricia's claim or to resist it. In similar circumstances, where the need to resolve a coverage dispute is essential to determine settlement prospects, a declaratory judgment action has been allowed. *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269 (10th Cir.1989); *Eureka Federal S & L v. Amer. Cas. Co. of Reading*, 873 F.2d 229 (9th Cir.1989).

If the issue had been resolved by the Circuit Court, it may have obviated the need for a lawsuit by Patricia against Pamela, which is what the law should encourage, but even, as became the case, if such a suit was ultimately required, at least all parties would know the maximum recovery that could be made against the policy and could plan their strategy accordingly. Because the issue was deferred, a lawsuit was required, and, if deferred longer, that lawsuit will almost certainly have to proceed to trial. Facing the prospect of a substantial judgment in excess of the policy limit claimed by Allstate, Pamela will likely be forced to obtain independent counsel to protect her interest.

Moreover, if a judgment in excess of $20,000 is obtained, a new declaratory judgment proceeding would then be likely in any event, and, should the judgment exceed $100,000 and should Pamela prevail in her view that the household exclusion is inapplicable, a further lawsuit, based on a bad faith refusal to settle within the $100,000 policy limit, would also be likely. *See State Farm v. White, supra,* 248 Md. 324, 236 A.2d 269; *Fireman's Fund v. Continental Ins. Co., supra,* 308 Md. 315, 519 A.2d 202. All of this can be avoided by an early resolution of the coverage dispute.

For the reasons set forth above, we conclude that the court erred in rejecting Pamela's motion to intervene. We shall remand the case for the Circuit Court to grant Pamela's motion to intervene and for trial of the issues raised as to her coverage. We see no reason why Patricia should not be permitted to intervene in the case as well, if she still chooses to do so.

APPEAL BY PATRICIA BENNING DISMISSED; ORDER DISMISSING COMPLAINT WITHOUT ADDRESSING MOTION TO INTERVENE VACATED; CASE REMANDED TO CIRCUIT COURT FOR CHARLES COUNTY FOR FURTHER PROCEEDINGS; COSTS TO BE PAID ONE–HALF BY APPELLANT PATRICIA BENNING, ONE–HALF BY APPELLEE.