635 A.2d 86

**Gloria SIPES, et al.**

**v.**

**BOARD OF MUNICIPAL AND ZONING APPEALS, et al.**

**No. 715, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 7, 1994.

80

David B. Irwin (Cristina Flores and Irwin, Kerr, Green, McDonald and Dexter, on the brief), Baltimore, for appellants.

Sandra R. Gutman, Baltimore, for appellee Bd. of Appeals.

Benjamin Rosenberg (Rosenberg, Proutt, Funk & Greenberg, Stanley S. Fine, Michael D. Berman and Kaplan, Heyman, Greenberg, Engelman & Belgrad, on the brief), Baltimore, for appellee Brooklyn Salvage.

Argued before BISHOP, WENNER and FISCHER, JJ.

BISHOP, Judge.

Appellee Brooklyn Salvage Corporation ("BSC") filed an application with appellee Board of Municipal and Zoning Appeals of Baltimore City (the "Board") for alteration of an existing conditional use of a junk yard. After a hearing, the Board approved the application on August 6, 1992. Appellants, Community of Curtis Bay Association, Inc. ("CCBA"), Concerned Citizens for a Better Brooklyn, Inc. ("CCBB"), and Maryland Waste Coalition, Inc. ("MWC"), (collectively, the "Organizations") filed an order for appeal of the Board's decision to the Circuit Court for Baltimore City on August 27, 1992. BSC filed an answer to the Organizations' appeal and a

motion to dismiss or, in the alternative, for summary judgment (hereinafter "first motion to dismiss"), both of which the Board adopted.

Before the circuit court ruled on that motion, appellant Gloria Sipes ("Sipes") filed a motion to intervene on October 13, 1992; the motion to intervene was filed forty-seven days after the appeal was noted and sixty-eight days after the decision of the Board. On the same date, the Organizations and Sipes filed an amended petition and order for appeal. In response, BSC filed a second motion to dismiss or, in the alternative, for summary judgment (hereinafter "second motion to dismiss"), which the Board adopted. The circuit court granted Sipes's motion to intervene and denied appellees' second motion to dismiss; it never ruled on the first motion to dismiss. After a hearing on the merits, the court remanded the case to the Board for a new hearing.

BSC filed a motion to alter or amend judgment, along with an affidavit of Lalit H. Gadhia ("Gadhia"), Chairman of the Board. Appellants moved to strike the affidavit. After a hearing, the court denied appellants' motion to strike and granted BSC's motion to alter or amend judgment, and affirmed the Board's action. Appellants filed a timely notice of appeal to this Court.

### Issues

Appellants raise four issues, which we restate as follows:

I.   Whether the circuit court erred when it considered an affidavit that was not a part of the agency record.

II.  Whether the circuit court erred when it gave weight to the ex-parte affidavit of a single Board member which purported to state what the entire Board actually intended in its unanimous Resolution, in contradiction to what was actually stated in that Resolution.

III. Whether the circuit court erred when it affirmed the Board's decision despite the fact that the Resolution stated inapplicable provisions of law, leaving the court

unable to determine whether there was substantial evidence on the record for the grant of the permit.

IV. Whether the circuit court erred when it determined that the Board's revised decision was supported by substantial evidence.

Appellees, without taking a cross-appeal, raise one issue: Whether the circuit court had jurisdiction to hear the appeal of the Board's decision where:

A. the Organizations were neither taxpayers nor "persons aggrieved" by the decision of the Board; and

B. Sipes's motion to intervene in the appeal was filed more than thirty days after the date of the Board's decision.

Because we shall conclude that the circuit court erred when it granted Sipes's motion to intervene and denied appellees' motions to dismiss, we need not address the merits of appellants' contentions.

## *Facts*

The facts surrounding BSC's application to the Board, the Board's decision, and the circuit court's consideration of the affidavit of Gadhia are not relevant to our discussion, *infra.* The facts that are relevant to the issue of standing are as follows.

In response to the Organizations' order for appeal of the Board's decision, appellees moved to dismiss the appeal based on the Organizations' failure to allege in the order for appeal either their status as taxpayers or as "aggrieved" persons; at least one of these is necessary to have standing to appeal from a decision of the Board. The trial court did not rule on that motion because, before it could do so, Sipes filed her motion to intervene and the Organizations and Sipes filed the amended petition and order for appeal.

In the motion to intervene, Sipes averred in relevant part:

8. Given Ms. Sipes' status as a Maryland taxpayer, the proximity of her home to the shredder site, the fact that she

has consistently voiced her concerns to [BSC] and the Board, Ms. Sipes has standing to appeal the Board's ruling. . . .

9. The interests of the existing parties to the appeal and Ms. Sipes are not the same, since each of three appellants has appealed in order to protect the interests of itself and its members, in light of the health, safety, environmental and other interests which concern the entire community surrounding [BSC's property]. Ms. Sipes, however, is concerned with a more limited geographical area, namely that of her home, and with the health and safety concerns peculiar to her. . . .

10. Since the particular interests of Ms. Sipes may not be adequately represented by the current parties, and since her interests will be impaired by disposition of this appeal were she not to intervene, Ms. Sipes hereby moves to intervene pursuant to Rule 2–214(a).

In the amended petition and order for appeal, the Organizations and Sipes stated:

1. . . . Appellants amend the Petition and Order for Appeal to state in greater detail the facts supporting that each of the Appellants is "aggrieved," thus has standing to appeal, and to correct a misnomer by including Gloria Sipes as an Appellant, since she is aggrieved and should have been named as an Appellant. . . .

&ast; &ast; &ast; &ast; &ast; &ast;

6. [CCBA] is "aggrieved" by the Board's decision . . . since its monthly meetings are held at the Curtis Bay Recreation Center, within one-half of a mile of [BSC]'s site. Since [CCBA]'s corporate purpose is to protect the health and environment of the Curtis Bay area, and since [BSC]'s shredder directly threatens these interests and [CCBA]'s meetings, [CCBA] has a separate and distinct property interest in the subject matter of this appeal, thus has standing.

7. [CCBB] is "aggrieved" by the Board's decision . . . since its meetings are regularly held at the Brooklyn Com-

munity Center, within two to two and one-half miles of [BSC]'s site. Since [CCBB's] corporate purpose is to protect the health and environment of the Brooklyn area, and since [BSC]'s shredder directly threatens these interests and [CCBB's] meetings, [CCBB] has a separate and distinct property interest in the subject matter of this appeal, thus has standing.

8. [MWC] is "aggrieved" by the Board's decision ... since its corporate purpose is to protect the health and environment by ensuring compliance with existing laws and regulations affecting the environment.... Since [BSC]'s shredder permit directly threatens these interests, [MWC] has a separate and distinct property interest in the subject matter of this appeal, thus has standing.

9. ... Sipes is "aggrieved" by the Board's decision ... since she is a resident of the Curtis Bay area who lives in close proximity to [BSC] ..., thus is directly subject to the health and environmental hazards that the shredder imposes.

\*      \*      \*      \*      \*      \*

14. ... Sipes, as President of [CCBA], as a member of [MWC], and on her own behalf, should have been named as an Appellant in the original Petition.

Appellees responded with a second motion to dismiss, again arguing that the Organizations lacked standing to appeal. Appellees also argued that Sipes could not intervene in a "defective" appeal (*i.e.,* one where none of the original parties has standing to appeal) after the expiration of the thirty day period for appealing the Board's decision.

On December 7, 1992, the circuit court held a hearing on the parties' motions. The court granted Sipes's motion to intervene and denied appellees' second motion to dismiss. The court did not rule on the first motion to dismiss because, in its view, it was "rendered moot" by the court's denial of the second motion to dismiss. Although the court did not state in its order the reasons for its decision, it did incorporate by reference the "reasons stated on the record on December 7,

1992." Unfortunately, the record on appeal to this Court does not include a transcription of that hearing because of a mechanical problem with the court reporter's recorder.

Additional facts will be included in the discussion, *infra.*

## Discussion

Justice Holmes once said, " 'Law is secreted in the interstices of procedure.' " *See Capron v. Mandel*, 250 Md. 255, 259, 241 A.2d 892 (1968) (quoting from an unidentified source). This case is a striking example of why careful adherence to the rules of procedure cannot be overlooked.

█ As we have indicated *supra*, we shall hold that the circuit court erred when it entertained the appeal from the Board because the Organizations did not have standing to appeal and Sipes could not intervene after the running of the thirty day period for taking an appeal. Before we address that issue, however, we must first decide whether we have jurisdiction to address the issue of standing in light of appellees' failure to note a cross-appeal. Appellants cite *Joseph H. Munson Co. v. Secretary of State*, 294 Md. 160, 448 A.2d 935 (1982), *aff'd*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), and argue that appellees' failure to note a cross-appeal from the circuit court's judgment precludes them from raising the issue of standing in this Court. We disagree.

In *Munson*, the plaintiff, a company that engaged in fund raising for charitable organizations, sought, among other things, to have a provision of the Maryland Code declared unconstitutional. The Secretary of State not only opposed the constitutional challenge on the merits, but also challenged the plaintiff's standing to make such a challenge. After the trial court upheld the constitutionality of the statute (thus, implicitly, finding that the plaintiff had standing), the plaintiff unsuccessfully appealed the issue of the statute's constitutionality to this Court. The Secretary did not appeal the ruling on standing. The plaintiff then petitioned the Court of Appeals for a writ of certiorari on the constitutional issue; the Secretary filed a cross-petition relating to the plaintiff's standing to

challenge the constitutionality of the statute. The Court granted both the petition and cross-petition.

The plaintiff argued that the Secretary's standing argument was not properly before the Court. The Court of Appeals agreed. The Court explained that "[u]nder circumstances where absence of standing would present an alternate ground for upholding a trial court's judgment, an appellee is entitled to argue that ground in an appellate court. In such situation, a cross-appeal would be unnecessary and, in fact, would be improper." 294 Md. at 167, 448 A.2d 935 (citation omitted); *see also Temoney v. State*, 290 Md. 251, 261, 429 A.2d 1018 (1981); *Offutt v. Montgomery County Bd. of Educ.*, 285 Md. 557, 563 n. 3, 404 A.2d 281 (1979). The Court recognized, however, that the Secretary was attempting to attack a declaratory judgment, which the trial court rendered on the merits. Under these circumstances the Court "would be obliged to order that the trial court's judgment be reversed and that the case be remanded with directions to dismiss the action." 294 Md. at 168, 448 A.2d 935. The Court concluded that the failure to file a valid, timely order of appeal precluded the Secretary from attacking the trial court's declaratory judgment. *But cf. Capron v. Mandel*, 250 Md. 255, 258–59, 241 A.2d 892 (1968) (appellee may raise on appeal the correctness of the lower court's refusal to grant a motion to dismiss based on improper venue and want of a necessary party, even though no cross-appeal is filed).

We agree with appellants that, in the case *sub judice*, the purported lack of standing would not afford an "alternative ground for affirming the trial court" because the circuit court affirmed the Board's decision on the merits. Rather, a determination that appellants lacked standing in the circuit court would require that we reverse the circuit court's judgment and remand the matter to that court with instructions to dismiss the appeal. *See Munson*, 294 Md. at 168, 448 A.2d 935. Our inquiry does not end here, however.

The Court in *Munson* also considered whether "the standing issue may be that type of question which [an appellate

court] will resolve on [its] own motion." 294 Md. at 168, 448 A.2d 935. First, the Court observed that "[s]everal Maryland cases ... indicate that questions concerning the plaintiff's standing to maintain the action do not fall within this category." *Id.* at 169, 448 A.2d 935. The Court cited as examples *Toomey v. Gomeringer,* 235 Md. 456, 460–61, 201 A.2d 842 (1964); *Costello v. Sieling,* 223 Md. 24, 29, 161 A.2d 824 (1960); *Pressman v. Mayor of Baltimore,* 222 Md. 330, 334, 160 A.2d 379 (1960); *Mayor of Baltimore v. N.A.A.C.P.,* 221 Md. 329, 332, 157 A.2d 433 (1960); and, *Pumphrey v. Pumphrey,* 11 Md.App. 287, 292–93, 273 A.2d 637 (1971). The Court then cited several cases that "seem to suggest that the standing of a plaintiff to maintain an action is an issue which an appellate court will address on its own motion", 294 Md. at 169, 448 A.2d 935, including *Reyes v. Prince George's County,* 281 Md. 279, 287–89, 380 A.2d 12 (1977); *Ginn v. Farley,* 43 Md.App. 229, 232, 403 A.2d 858 (1979), *cert. denied,* 286 Md. 747 (1980); and, *Balance Ltd. v. Short,* 35 Md.App. 10, 11, 368 A.2d 1116 (1977). Ultimately, the Court did not have to resolve the seeming conflict because, in either event, the plaintiff in *Munson* did have standing.

In this case, we must decide whether appellees can challenge appellants' standing in the circuit court appeal because, unlike the Court in *Munson,* we are unable to conclude that appellants had standing. In each of the first category of cases the Court of Appeals cited in *Munson,* the party challenging standing failed to raise that issue in the lower court. In this case, however, appellees clearly raised the issue below—twice in fact. We find the second category of cases the Court cited in *Munson,* all of which are more recent, to be more persuasive. Although the issue of standing may not be jurisdictional in nature, *see Costello,* 223 Md. at 29, 161 A.2d 824; *Maryland Waste Coalition, Inc. v. Maryland Dep't of Env't,* 84 Md.App. 544, 548, 581 A.2d 60 (1990), *rev'd on other grounds,* 327 Md. 596, 612 A.2d 241 (1992), it does go to the very heart of whether the controversy before the court is justiciable, *see Reyes,* 281 Md. at 287–89, 380 A.2d 12. If the controversy is nonjusticiable, it should not be before the court,

and therefore must be dismissed. *See, e.g., Ginn,* 43 Md.App. at 232, 403 A.2d 858. The failure of a party to file a notice of cross-appeal does not prevent an appellate court from considering whether the lower court had, or the appellate court has, jurisdiction over the case. By the same token, it should not prevent us from considering the issue of standing in this case, especially where appellees raised the issue in the circuit court. *See also Windsor Hills Improvement Ass'n v. Mayor of Baltimore,* 195 Md. 383, 394, 73 A.2d 531 (1950) (discussed *infra,* wherein the Court of Appeals addressed the appellee's motion to dismiss the appeal on grounds similar to those relied upon by appellees in the case *sub judice,* even though the appellee did not file a cross-appeal). We shall also consider whether the circuit court abused its discretion when it granted Sipes's motion to intervene because that issue is so closely interrelated with whether any of the appellants had standing to pursue the appeal.

Appellees argue that the only parties to appeal the decision of the Board within the thirty day period provided in Rule B4 were the Organizations, which do not have standing because they are neither taxpayers nor "aggrieved" parties. (Rule B4, which was in effect at the time of the circuit court proceedings, has since been superseded by Rule 7–203, effective July 1, 1993, which although substantively identical in all respects material to this appeal does treat the thirty day period as one of limitations.) Further, appellees contend that Sipes's motion to intervene, filed more than sixty days after the date of the Board's decision, was untimely under both Rule B4 and Rule 2–214, and did not contain an explanation as to why Sipes did not take action before the running of the thirty day period. In sum, appellees maintain that,

> [b]ecause the time for appeal had expired and there was no appellant with standing in the case when Sipes filed her Motion to Intervene, there was no justiciable controversy in which Sipes could intervene. Having failed to note a timely appeal from the Board's decision, Sipes could not use Md. Rule 2–214 to bootstrap herself into a case that had termi-

nated and in which the decision of the Board had become final.

Appellees rely, in part, on *Windsor Hills, supra.*

Appellants do not take issue with whether the Organizations had standing to appeal the Board's decision. Rather, they argue that (1) Sipes had standing as both a taxpayer and as an aggrieved party (which appellees do not dispute); (2) under *Windsor Hills*, the circuit court had the discretion to permit Sipes to intervene; and, (3) the circuit court properly exercised that discretion when it granted Sipes's motion pursuant to Rule 2–214.

It is not necessary that we spend a great deal of time discussing whether the Organizations had standing to appeal; appellants do not dispute appellees' assertion that they did not. Indeed, the Organizations did not allege sufficient facts in its amended petition and order for appeal from which the circuit court could conclude that they were either taxpayers or aggrieved parties. *See Norwood Heights Improvement Ass'n v. Mayor of Baltimore,* 195 Md. 368, 372–73, 73 A.2d 529 (1950) (neighborhood improvement association not showing that it was a taxpayer or person aggrieved by the decision of the Board, or that it had any interest to be affected by the outcome of the case, was not entitled to appeal); *Bryniarski v. Montgomery County Bd. of Appeals,* 247 Md. 137, 144, 230 A.2d 289 (1967) ("[A] person aggrieved by the decision of a board of zoning appeals is one whose personal or property rights are adversely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally."); *see also Maryland–National Capital Park & Planning Comm'n v. Smith,* 333 Md. 3, 10–14, 633 A.2d 855, 859–61 (1993) (holding that the Maryland–National Capital Park & Planning Commission, an advisory body, was not an aggrieved party and thus did not have standing in a circuit court appeal because "[i]t has not suffered any monetary loss, and . . . has no special personal interest at stake" different

from that of the public in general); *see also Pattison v. Corby,* 226 Md. 97, 103, 172 A.2d 490 (1961) ("a rezoned area *one-half mile away* and effectively *hidden from view* was too far to give the protestants standing to sue in the absence of a showing of special damage"); *Shore Acres Improvement Ass'n v. Anne Arundel County Bd. of Appeals,* 251 Md. 310, 317–18, 247 A.2d 402 (1968) (community association's appeal from zoning board decision dismissed because its property, located 3,760 feet measured in a straight line, and approximately 9,400 feet by road, from the rezoned property, was too distant to be " 'especially affected in a way different from that suffered by the public generally' "). Further, there is no question that Sipes, as a taxpayer, was entitled to appeal the decision of the Board. The only question the parties ask us to decide is whether Sipes could intervene in an appeal after the running of the thirty day appeal period, where that appeal was originally filed by parties without standing.

Appellants and appellees both cite *Windsor Hills, supra,* 195 Md. 383, 73 A.2d 531. In that case, the Association timely appealed the decision of the Board to allow certain construction by Westchester Apartments, Inc. Approximately two months after the expiration of the period for appealing the Board's decision, Bernard Kairys, a taxpayer and president of the Association, was granted leave to intervene, despite Westchester's challenge to the timeliness of Kairys's petition for intervention. Westchester also unsuccessfully argued to the trial court that the Association lacked standing to appeal to the circuit court. On appeal to the Court of Appeals, Westchester moved to dismiss the appeal for the same reasons. The Court of Appeals wrote:

> As to the Association the motion must be granted. A corporation is not sufficiently "interested" to sue, or "aggrieved" to appeal, merely because its members are "interested" or "aggrieved." Either a "person aggrieved" or a taxpayer may appeal. The Association is neither. On the record Kairys is a taxpayer and a party in the lower court and therefore entitled to appeal to this court. We think, however, that his petition for intervention after expiration of

the time for appeal could not validate the Association's attempt to appeal and should have been denied. The right to appeal is conferred by statute and cannot be created by waiver when it is not exercised in accordance with the statute.

195 Md. at 394, 73 A.2d 531 (citations omitted). In its mandate, the Court dismissed the appeal as to the Association, but affirmed the lower court's decision as to Kairys.

Remarkably, appellants and appellees each argue that *Windsor Hills* supports their respective position. Appellees contend, at least implicitly, that the Court of Appeals ruled in the body of the opinion that the lower court should not have granted Kairys leave to intervene after the expiration of the period for appealing the Board's decision. Appellants, on the other hand, look to the mandate and assert that, because it did not dismiss Kairys's appeal, but instead affirmed the lower court's decision as to Kairys, the Court approved of Kairys's intervention. In order to decipher the Court's holding in *Windsor Hills*, we turn to a later case, *Nyburg v. Solmson*, 205 Md. 150, 106 A.2d 483 (1954).

In *Nyburg*, Sidney Solmson ("Solmson") appealed to the Board from the Bureau of Building Inspection's denial of an application for a permit to continue a non-conforming use. Specifically, Solmson desired to use open space for the parking, storage, and washing of motor vehicles, and for the sale of gasoline and accessories. The Board held that Solmson had a non-conforming use, but then restricted that use to the sale of gasoline and accessories and the parking and storage of no more than ten vehicles. Solmson appealed that decision to the Baltimore City Court. After the period for filing an appeal to the court expired, Sidney Nyburg ("Nyburg") filed an appeal, which the court dismissed because it was untimely filed. Nyburg did not appeal that decision, but rather filed a petition for leave to intervene in Solmson's appeal. The court granted that petition. Solmson then "filed a petition to strike the order making [Nyburg] a party defendant, on the ground that the latter had filed an untimely appeal from the order of the Board ..., which he now sought to attack as an intervenor."

205 Md. at 155, 106 A.2d 483. After the court conducted a hearing on the merits of the appeal, it granted Solmson's petition, finding that Nyburg "was not entitled, under the facts of the case, to intervene as a defendant, having taken a late appeal from the decision of the Board of which he now complains." *Id.* at 156, 106 A.2d 483.

The Court of Appeals considered whether the trial court properly exercised its discretion when it denied Nyburg's petition for leave to intervene. In doing so, the Court cited and discussed *Windsor Hills:*

In *Windsor Hills Improvement Assoc. v. City of Baltimore,* an association appealed to the Baltimore City Court from the decision of the Board, and two months after the time for appeal had expired, one Kairys, a taxpayer and president of the association, was granted leave to intervene as a party plaintiff. The court below dismissed the appeal of the association on the ground that it was not a person nor a taxpayer who was aggrieved or interested. Judge Markell, in speaking of the lower court's permission to Kairys to intervene, said for the Court: "On the record Kairys is a taxpayer and a party in the lower court and therefore entitled to an appeal to this court. We think, however, that his petition for intervention after expiration of the time for appeal could not validate the Association's attempt to appeal and should have been denied." In the case before us, it is clear that the appellant, who had vigorously participated in the hearing before the Board, was entitled to appeal under the provisions of the Enabling Act and the Zoning Ordinance, both as a person "aggrieved" by a decision of the Board, and as a "taxpayer". He could have made direct attack on the Board's decision and order and, in fact, did so, but by a late appeal. It was only after it was apparent that the appeal was to be dismissed, that the appellant sought by intervention to obtain the relief which he had sought by appeal but lost by his failure to act in time. The court below permitted him to intervene on his *ex parte* application and to participate in the case, ruling only after the case had been fully heard and as part of the final order, that he was

not entitled to intervene. Essentially then, the action of the lower court was to forbid the intervention of the appellant for the purposes of appeal to this Court. In both procedure and substance, the case is not unlike *Conroy v. Southern Maryland Agricultural Assoc., supra,* and the procedure condemned in *Windsor Hills Improvement Assoc. v. City of Baltimore, supra.* We think that the action of the lower court was fully justified under the circumstances of the case and well within the exercise of its sound discretion.

*Id.* at 157–58, 106 A.2d 483 (citation omitted).

*Nyburg* makes clear that the Court in *Windsor Hills* disapproved of the lower court's decision to allow Kairys to intervene. *Nyburg,* however, does not clarify why the Court in *Windsor Hills* did not dismiss the appeal as to Kairys. One thing is clear, though. The Court in *Nyburg* did hold that the lower court's refusal to grant Nyburg leave to intervene was "fully justified" and "well within the exercise of its sound discretion." We must determine, therefore, whether the circuit court in the case *sub judice* abused its discretion when it granted Sipes's motion to intervene.

Rule 2–214 provides, in part:

**(a) Of Right.**—Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately presented by existing parties.

**(b) Permissive.**—

(1) *Generally.*—Upon timely motion a person may be permitted to intervene in an action when the person's claim or defense has a question of law or fact in common with the action.

\* \* \* \* \* \*

(3) *Considerations.*—In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Rule 2–214 was modeled after its federal counterpart—Rule 24 of the Federal Rules of Civil Procedure. Thus, "[i]n the absence of Maryland authority, . . . decisions of the federal courts interpreting [Rule 24 are] of considerable precedential value in construing our rule." *Maryland Radiological Soc'y, Inc. v. Health Servs. Cost Review Comm'n,* 285 Md. 383, 388 n. 5, 402 A.2d 907 (1979) (*citing Citizens Coordinating Comm. v. TKU Assocs.,* 276 Md. 705, 709–10, 351 A.2d 133 (1976)).

It is well-settled that "[i]ntervention presupposes the pendency of an action in a court of competent jurisdiction and cannot create jurisdiction if none existed before." 7C Charles A. Wright et al., *Federal Practice and Procedure* § 1917 (1986) (footnotes omitted); *see also Fuller v. Volk,* 351 F.2d 323, 328 (3d Cir.1965) ("[S]ince intervention contemplates an existing suit in a court of competent jurisdiction and because intervention is ancillary to the main cause of action, intervention will not be permitted to breathe life into a 'nonexistent' law suit."); *Roberts v. Carrier Corp.,* 117 F.R.D. 426, 428 (N.D.Ind.1987) ("[T]he exercise of discretion in allowing permissive intervention presupposes that the court has jurisdiction. The jurisdictional requirement is separate and distinct from the "timeliness" requirement. . . ."); *Hobbs v. Police Jury,* 49 F.R.D. 176, 180–81 (W.D.La.1970) ("[A]n intervenor takes the case as he finds it. . . . Since . . . there is no proper suit before this Court, plaintiff . . . has no suit into which to intervene."); *Davis v. Jury Comm'n,* 261 F.Supp. 591, 594 (M.D.Ala.1966) (after court dismissed underlying suit, there was no justiciable action pending in which to intervene).

As a logical extension of this rule, a party cannot intervene in an action where none of the original parties to that action has standing. *See Chiles v. Thornburgh,* 865 F.2d 1197, 1212 (11th Cir.1989) ("The standing doctrine ensures that a justiciable case and controversy exists between the

parties. Intervention ... presumes that there is a justiciable case into which an individual wants to intervene."); *Mattice v. Meyer*, 353 F.2d 316, 319 (8th Cir.1965) (party cannot intervene in action where plaintiff has no standing).

■ Before Sipes filed her motion to intervene, appellees filed a motion to dismiss grounded upon the Organizations' lack of standing to bring the appeal. The circuit court did not rule on that motion. As discussed *supra*, the Organizations did not have standing, and as they were the only party plaintiffs, the court should have dismissed the appeal. Even if dismissal had not been required, however, we would nevertheless conclude that the court should have denied that motion.

■ In *Maryland Radiological Soc'y, Inc., supra*, the Court of Appeals held that a "timely" application for intervention is a prerequisite to such a request being granted. "Thus, before proceeding to consider the substantive merits of an intervention motion, a trial court should require that the applicant demonstrate the promptness of his request." 285 Md. at 388, 402 A.2d 907. The Court identified four factors to be taken into account, along with all other relevant circumstances, when determining the timeliness of a motion to intervene:

(1) "the purpose for which intervention is sought;"

(2) "the probability of prejudice to the parties already in the case;"

(3) "the extent to which the proceedings have progressed when the movant applies to intervene;"

(4) "the reason or reasons for the delay in seeking intervention."

*Id.* at 389, 402 A.2d 907; *see also Hartford Ins. Co. v. Birdsong*, 69 Md.App. 615, 623–24, 519 A.2d 219 (1987). Although the record does not reflect whether, or to what extent, the trial court considered timeliness as a threshold issue, we hold that the trial court should have deemed the motion untimely filed and, thus, abused its discretion when it granted the motion. We explain.

Appellants cite *Department of State Planning v. Mayor of Hagerstown,* 288 Md. 9, 415 A.2d 296 (1980), and argue that Sipes's motion was timely. The facts of *State Planning* are as follows:

On 13 November 1978, the City Council of Hagerstown (Council), an appellee, granted a requested reclassification of approximately 46 acres of land from the IR zone (Industrial Restricted) to the C3 zone (Commercial Central). The Hagerstown Planning Commission (Commission) had opposed the granting of the requested reclassification. The appellant, the Department of State Planning (State Planning), had not participated in the proceeding before the Council. On 30 November 1978, the Commission informed State Planning that the Hagerstown City Attorney had indicated that he could not represent the Commission and that it had no other legal counsel to represent it on appeal from the Council's zoning action. It requested that State Planning represent the Commission for the purpose of filing both an appeal and a motion for the appointment of counsel. On 13 December 1978, in the Circuit Court for Washington County, State Planning filed both the appeal and the motion on the Commission's behalf. On 11 January 1979, the Council filed a motion to dismiss the appeal on the ground that the Commission lacked standing. On 21 February 1979, the Circuit Court denied the Commission's motion for appointment of counsel and the Council's motion to dismiss. On 9 March 1979, State Planning filed a motion to intervene as a party appellant.

On 8 January 1979, the Council granted a reclassification of a second parcel of land consisting of approximately 11 acres, from the R2 zone (Residential) and C2 zone (Commercial General) to the C3 zone. On 5 February 1979, the Commission, which had also opposed the granting of this requested reclassification, filed an appeal. On 9 March 1979, the Council filed a motion to dismiss this second appeal on the ground that the Commission lacked standing. On that same day, State Planning filed a motion to inter-

vene as a party appellant. On 27 June 1979, the Circuit Court denied the Council's motion to dismiss.

On 2 July 1979, the Circuit Court denied each of State Planning's motions to intervene on the ground that State Planning did not have an unrestricted right to intervene. It determined that because State Planning had not demonstrated that a substantial State or interjurisdictional interest was involved in the zoning proceedings before the Council, and because State Planning had not participated in those proceedings, it could not intervene in the judicial proceedings on appeal.

288 Md. at 12–13, 415 A.2d 296. After the Court of Appeals determined that State Planning had an unrestricted right to intervene, it considered whether its motion was timely:

The motions to intervene were not made until approximately three months after the first appeal was filed and approximately one month after the second appeal was filed. More important, the motions were made approximately two weeks after the Circuit Court denied the Commission's motion for appointment of counsel and denied the Council's motion to dismiss the first appeal. It was not until these two motions were denied that it became apparent that the Commission had standing to appeal, that therefore the appeals would proceed, and that, as a practical matter, in the absence of legal counsel for the Commission, State Planning would have to intervene if its interests were to be adequately represented. At the time State Planning's motions to intervene were filed, the denial of the Commission's motion for appointment of counsel and the Council's motion to dismiss were the only significant issues which had been decided with respect to the first appeal. A motion to dismiss was pending in the second appeal. However, no determinations had been made with respect to the merits of either appeal. No legal memoranda had been filed and no hearings had been held. In addition, there is nothing in the record to show that the proposed intervention would have delayed the proceedings on the merits in any way. Finally, there is nothing in the record to suggest that prejudice would have

resulted from State Planning's proposed intervention. Under all of these circumstances, State Planning's motions to intervene were timely.

*Id.* at 17–18, 415 A.2d 296. Appellants argue that, because Sipes "moved to intervene one and one-half months after the appeal was filed, when no decision on the merits of the appeal had been entered, no hearings had been held, and a motion to dismiss was pending," and because "there was no suggestion that the proposed intervention would delay the proceedings on the merits in any way, or that any prejudice would result from the intervention," her motion was timely. We disagree.

Appellants fail to appreciate a significant difference between *State Planning* and the instant case. In *State Planning,* the Court assumed that the lower court's denial of the Council's motion to dismiss was not erroneous, *i.e.,* the Commission did, in fact, have standing. Although the motion to dismiss filed in the second appeal was not yet ruled upon, the Court did not concern itself with the issue of the Commission's standing. In the case *sub judice,* there is no question that the Organizations did not have standing to appeal. Thus, Sipes attempted to intervene in an action where none of the original parties had standing and the period for appealing the Board's decision had already expired.

Further, there is nothing in the record to indicate that Sipes filed the motion to intervene for any reason other than to cure the Organizations' lack of standing. Sipes, as president of CCBA and a member of MWC, knew or should have known of the Board's decision and the time for filing an appeal therefrom. The only "reason" advanced for Sipes's failure to appeal the decision along with the Organizations is that she "should have been named as an Appellant in the original Petition." This, in actuality, is a reflection, not a reason. To allow Sipes to intervene in the appeal after the thirty day period under Rule B4 expired, and under circumstances where none of the original parties to the appeal had standing and a motion to dismiss was filed, would effect a miscarriage of justice.

In *Benning v. Allstate Ins. Co.*, 90 Md.App. 592, 598–99, 602 A.2d 233 (1992), an automobile insurance policyholder filed a motion to intervene in an insurance coverage declaratory judgment action filed by her sister. We held that the motion—which the policyholder filed eighteen days prior to the scheduled trial date in order to "cure" her sister's lack of standing—was timely because the policyholder was prepared to proceed with trial, all witnesses were present, and the case could proceed without delay. "In other words, neither [the sister] nor Allstate would have been prejudiced in any way by allowing intervention." *Id.* at 599, 602 A.2d 233.

Although we did not address issues relating to the statute of limitations, presumably, the policyholder could have filed an independent action, rather than a motion to intervene, in order to accomplish her objective. The automobile accident occurred in February 1989, the declaratory judgment action was filed in July 1990, and the motion to intervene was filed in July 1991, well within any conceivable statute of limitations. *Cf. Lane v. Nationwide Mut. Ins. Co.* 321 Md. 165, 582 A.2d 501 (1990). In the case *sub judice*, however, any attempt by Sipes to file an independent appeal to the circuit court on or after the date she filed the motion to intervene would have been untimely because of the running of the thirty day appeal period. *Benning*, therefore, is not controlling.

Recently, in *Grand–Pierre v. Montgomery County*, 97 Md. App. 170, 627 A.2d 550 (1993), we held that a tort claimant cannot intervene in an action after the running of the statute of limitations where the claimant is seeking damages above and beyond those sought by the original plaintiff. This would "allow a plaintiff to side step a defense of limitations." *Id.* at 178, 627 A.2d 550. In that case the original plaintiff had standing and filed the complaint within the three year statute of limitations. In the case *sub judice*, the facts are more compelling. The Organizations did not have standing, and Sipes did not file a timely appeal. Sipes simply could not use Rule 2–214 to resuscitate a case that was dead on arrival in the circuit court.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO DISMISS THE APPEAL. APPELLANTS TO PAY THE COSTS.