*Greater Towson Council of Community Assocs., et al. v. DMS Dev't, LLC, et al.*, No. 853/854, September Term, 2016. Opinion filed on November 1, 2017, by Berger, J.

**HEADNOTES**

ZONING AND LAND USE -- STANDING -- PROPERTY-OWNER STANDING -- ASSOCIATION STANDING

Where an entity is an "umbrella organization" of neighborhood association members, rather than an association or neighborhood association with individual resident members, and it owns no property within Maryland separate and apart from its member organizations, it does not have standing to petition the circuit court for judicial review of an administrative zoning decision, unless it demonstrates that it was "specially aggrieved" in a way that is "different from the general public."

ZONING AND LAND USE -- STANDING – PETITIONS FOR JUDICIAL REVIEW -- PROPERTY-OWNER STANDING

A property owner is "aggrieved" when (1) his or her property adjoins, confronts or is "nearby" the subject property (i.e. "*prima facie* aggrieved"), or (2) "she is farther away . . . [but] offers 'plus factors' supporting injury" (i.e. "almost *prima facie* aggrieved").

PETITIONS FOR JUDICIAL REVIEW -- PROPERTY-OWNER STANDING -- MOTIONS TO INTERVENE

Where an intervenor was not a party to the proceedings before the Board, the only remaining petitioner in the case lacked standing to petition for judicial review of an administrative agency's decision, and a motion to dismiss on that basis was pending before the court, the motion to intervene must be denied.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 853 and 854

September Term, 2016

_____

GREATER TOWSON COUNCIL OF
COMMUNITY ASSOCIATIONS

v.

DMS DEVELOPMENT, LLC

_____

Berger,
Reed,
Salmon, James P.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed:  November 1, 2017

This appeal arises from two petitions for judicial review in the Circuit Court for Baltimore County of two zoning decisions of the Board of Appeals ("Board") involving a proposed Planned Unit Development ("101 York PUD" or "the PUD") located in Baltimore County, Maryland. Appellant and cross-appellee, Greater Towson Council of Community Associations ("GTC") -- an "umbrella group" that represents more than 30 neighborhoods in Towson, Maryland -- opposed the approval of the PUD before the Board in one case (the "PUD approval case"), and the County Council's grant of a waiver of local "open space" requirements in the other case (the "open space waiver case"). The Board ruled in favor of the developer of the 101 York PUD, appellee and cross-appellant, DMS Development, LLC ("DMS") in both cases. The cases were consolidated before the circuit court, and DMS moved to dismiss GTC's petition based on its assertion that GTC lacked standing. Multiple parties have been involved at varying points during the ascent to this Court of both cases. Nevertheless, only GTC timely filed and continued to maintain its petitions for judicial review before the circuit court at the decisive point in the proceedings.

In both appeals from the circuit court affirming the Board's decisions on the merits in both cases, GTC presents several issues for our review. Many aspects of the issues are overlapping as GTC had averred in the PUD approval case that the PUD should not be approved because the open space waiver was not properly granted. We list the issues on the merits of each case in turn. In the open space waiver case, GTC asks us to decide the following questions, which we have reworded as follows:

1. Whether the circuit court erred when it affirmed the ruling of the Board to grant the open space waiver, even though the County's original approval of the waiver was granted by the Deputy Administrative Officer and Director of Permits Approvals and Inspections ("Deputy Director"), rather than the Director of Recreation and Parks.

2. Whether the circuit court erred when it determined that the PUD constituted a "dormitory" and affirmed the Board's decision to approve the open space waiver, which was based on its finding that the PUD was located in a "RAE" district.

3. Whether the circuit court erred when it affirmed the ruling of the Board that the open space waiver fee of "zero" was not appealable.

In GTC's appeal of the circuit court's affirmance of the Board's decision in the PUD approval case, GTC presents us with the following issues:

1. Whether the Board and the circuit court erred when each ruled that the Administrative Law Judge had no statutory authority to condition approval of the PUD on the payment of an open space waiver fee.

2. Whether the circuit court erred when it found that the Deputy Director's approval of an open space waiver did not render the waiver invalid and, therefore, that the Board erred when it affirmed the Administrative Law Judge's decision to approve the PUD.

3. Whether the circuit court erred when it affirmed the Board's decision affirming the decision of the Administrative Law Judge to approve the PUD, the Board's decision in the open space waiver case to grant the waiver on the basis of the PUD's zoning district, without determining whether the PUD constituted a "dormitory."

4. Whether the circuit court erred when it affirmed the Board's decision to affirm the ruling of the Administrative Law Judge, which found that the zoning

2

density permitted on the property was properly amended by the County Council.

DMS has noted cross-appeals in both cases, arguing that the GTC does not have standing to maintain an appeal. In that context, DMS presents us with primarily three issues, which we have reworded as follows:

I. Whether the circuit court erred when it denied DMS's motion to dismiss GTC's petition for judicial review of the Board's decision in the open space waiver case based on GTC's lack of standing before the circuit court.

II. Whether the circuit court erred when it denied DMS's motion to dismiss GTC's petition for judicial review of the Board's decision in the PUD approval case based on GTC's lack of standing before the circuit court.

III. Whether the circuit court erred when it granted motions to intervene in the PUD approval case after the limitations period for filing an appeal of the Board's decision had expired, DMS had filed a motion to dismiss GTC's petition for judicial review, and where the intervenors were not parties in the proceedings before the Board.

Because of the similarity of the standing issues in both cases, and because GTC's standing to appeal the Board's decisions to the circuit court is determinative in both the PUD approval case and the open space waiver case, we have consolidated our opinions in both cases below. In our view, the issues presented by DMS in its cross-appeals are dispositive in both cases. We hold that GTC did not have standing to petition for judicial review of the Board's decisions in either of the two cases, and therefore, the circuit court erred when it denied DMS's motion to dismiss and reached the merits of the case.

3

**FACTS AND PROCEEDINGS**

DMS is the developer of property which is the subject of a proposed PUD, known as the 101 York PUD. The proposed PUD's location is in the heart of urban Towson, Maryland, just north of the intersection of York Road and Burke Avenue. The PUD will contain a "mixed residential dormitory and commercial project." On July 7, 2014 the Baltimore County Council ("County Council") passed Resolution 40-14, which made the PUD eligible for review by Baltimore County agencies. Pursuant to BCC § 32-6-108(c), new developments are required to provide a certain amount of recreational "open space" depending on the number of residential units. DMS was granted a waiver of the local open space requirement, and the County set the fee to be paid in lieu of meeting the open space requirements at "zero" dollars.

On October 7, 2013 the PUD application was submitted to the County Council. The Post-Submission Community Input Meeting was held on October 30, 2013. On April 24, the Baltimore County Council resolved Resolution 40-14, which provided that the 101 York PUD was eligible for continued review, pursuant to BCC § 32-4-241 *et. seq.* The Pre-Concept Meeting was held on July 21, 2014, followed by a Community Input Meeting on September 9, 2014 and two more Community Input Meetings on October 6 and 28 of 2014. A Concept Plan Conference was held on August 8, 2014 and a Development Plan Conference was held on December 10, 2014.

On January 9, 2015 Arnold Jablon, Deputy Administrative Officer and Director of Permits Approvals and Inspections, recommended that the Council approve DMS's request for a waiver of the local open space requirements. The recommendation was based on

4

several factors including DMS's representation that it was exempt from satisfying the open space requirements because: (1) the "[p]roject is located in a RAE zone or CT district;" and (2) the "[p]roject is… dormitories for the housing of not less than 50 students attending an accredited higher education institution."  Additionally, the Department of Recreation and Parks determined that "there is no suitable land to meet the open space requirements" and confirmed that "[t]here is no Master Plan and/or other County plan conflict."[1]

On December 10, 2014, the Zoning Review Board issued an additional comment to its final recommendations noting,

> The dormitory rooms shall be occupied as temporary housing by matriculating Towson University students only. A Special Hearing shall be required prior to any such rooms being rented or otherwise occupied as permanent or temporary housing to non matriculating Towson University Students.

According to Resolution 63-00, the fee-in-lieu for a local open space waiver for this project was set at "zero" dollars.  The Council approved Resolution 40-14 at its July 7, 2014 meeting, which approved the continued review of the proposed PUD.  Resolution 40-14 provides the following:

> WHEREAS, the site fronts York Road and is zoned B.M. and R.A.E.2, and the PUD proposes the development of a high quality mixed residential dormitory and commercial project containing 611 beds, 495 parking spaces, and approximately 10,000 square feet of commercial spaces, and provides for two means of access, one via York Road and one via an easement to Burke Avenue which involves access to commercial parking over an adjacent parcel through a residential zone R.A.E.2;

> * * *

---

[1] To be eligible for an open space waiver pursuant to BCC §32-6-108(c), a PUD "shall provide a minimum of 1,000 square feet of open space per residential dwelling unit."

5

WHEREAS, prior to the submission of its application the developer DMS held extensive community meetings with surrounding homeowners' associations and interested stakeholders, including the Greater Towson Council of Community Associations and the Towson Triangle Committee created by the office of Councilman Marks;

\* \* \*

BE IT RESOLVED BY THE COUNTY COUNCIL OF BALTIMORE COUNTY, MARYLAND that the proposed site for the general development PUD filed by DMS and known as "101 York" is eligible for continued County review in accordance with Section 32-4-241, et seq. of the County Code.

BE IT FURTHER RESOLVED, that due to the public policy and community benefits that stem from the PUD, the County Council approves the proposed density for the proposed PUD to permit a total of 611 dormitory beds on the property, 495 parking spaces, and the inclusion of approximately 10,000 square feet of commercial space on the site; and

BE IT FURTHER RESOLVED, that the County Council approves the use of two means of access for the PUD, one via York Road and one via an easement to Burke Avenue which involves access to commercial parking over an adjacent parcel through a residential zone (R.A.E.2).

After the three Community Input Meetings and the County's approval of the PUD, GTC and the American Legion, an adjacent property owner, opposed the approval before the Hearing Examiner, also referred to in the proceedings below as the Administrative Law Judge ("ALJ"). The proceedings before the ALJ on the approval of the PUD began on January 12, 2015. The ALJ approved the PUD on May 12, 2015, subject to certain conditions including that DMS pay a waiver fee of $1,358,084.00, rather than the zero dollar waiver fee set by the County Council in Resolution 63-00. GTC appealed the ALJ's

6

approval of the waiver to the Board, and DMS appealed the ALJ's decision to make approval of the PUD subject to the payment of a $1,358,084.00 fee.

On October 5, 2015, the Board affirmed the ALJ's decision to approve the PUD, but reversed the ALJ's decision to make approval subject to the fee set by the ALJ. The Board based its decision on its conclusion that the ALJ did not have authority or jurisdiction over the decision to grant the open space waiver. That authority, the Board found, was given to the Board under the Baltimore County Charter, §§ 602 and 603. Indeed, the open space waiver issue was pending before the Board in a separate case when the ALJ issued his findings on that issue.

Unlike the PUD approval case, which first went before the ALJ only on the issue of the PUD's approval, the first decision to be made and contested in the open space waiver case was the decision of the Director of Permits Approvals and Inspections to approve the open space waiver on January 9, 2015. GTC appealed the County's grant of an open space waiver to the Board of Appeals directly. The Board of Appeals reviewed the decision to grant the open space waiver *de novo*. *See* Md. Code (2013, 2013 Repl. Vol.), § 10-305, Local Government Art. (permitting original jurisdiction for local county boards of appeals or jurisdiction to review the action of an administrative officer or unit of county government.). On September 17, 2015, the Board of Appeals in the open space waiver case approved the waiver for the 101 York PUD, including the County Council's designation of a zero dollar waiver fee.

Two separate petitions for judicial review were filed in the Circuit Court for Baltimore County of the Board's October 5, 2015 decision, which affirmed the ALJ's

7

decision to approve the PUD but reversed the ALJ's ruling making approval of the PUD subject to a $1,358,084.00 fee for the open space waiver. The first petition was filed by GTC on October 16, 2015, and the second petition was filed on October 29, 2015 by the American Legion, Post No. 22, Inc. ("American Legion"), along with the following individuals: Frederick Hofferbert, Jr., James Rebbert, Paul Moran, John Adair, and Kraig Dean, all of 125 York Road.

On January 21, 2016, after previously attempting to file a dismissal of their petition on January 15, 2016, the American Legion and all of the individual petitioners, as well as DMS, filed a Stipulation of Partial Dismissal in the PUD approval case. After the stipulated dismissal, the only remaining petitioner in both the PUD approval case and the open space waiver case was GTC. DMS filed motions to dismiss in both the PUD approval case as well as the open space waiver case based on GTC's lack of standing.

On or around February 16, 2016, after DMS filed its motions to dismiss, Towson Lubrication, LLC (doing business as Jiffy Lube) ("Towson Lubrication"), Helen Keplinger ("Keplinger"), Ed Kilcullen ("Kilcullen") and two others[2] filed motions to intervene in the petition for judicial review of the Board's decision in the PUD approval case.[3] None of

---

[2] Two other individuals, Tracey Marcantoni and Gregory Bauer, were also part of Keplinger's and Kilcullen's motion to intervene in the PUD approval case. Prior to the hearing before the circuit court, however, these two individuals withdrew as parties to the motion.

[3] Two separate motions to intervene were filed on February 16, 2016 by Towson Lubrication along with William Chaney in one motion, and Keplinger and Kilcullen, along with Marcantoni and Bauer, in a second motion. Paul Hartman and Ed Kilcullen filed motions to intervene in the open space waiver case, but they withdrew their motions on May 4, 2016.

the intervenors were parties before the Board proceedings in the PUD approval case. DMS opposed the motion to intervene.

Both the PUD approval and the open space waiver cases were consolidated for the proceedings before the circuit court. At the June 1, 2016 hearing, the circuit court denied DMS's motions to dismiss based on GTC's lack of standing in both cases. The circuit court further granted the motion to intervene filed by Towson Lubrication, Keplinger, and Kilcullen in the PUD approval case, despite acknowledging that the intervenors were not parties in the case before the Board. The circuit court's decision to grant the motions to intervene was based, in part, on its determination that GTC -- the only remaining petitioner in the case -- had standing to petition for judicial review.

By the end of the proceedings on June 1, 2016, however, the circuit court affirmed both of the Board's decisions -- the September 17, 2015 decision to approve the open space waiver for the 101 York PUD and the Board's October 5, 2015 decision to affirm the ALJ's decision to approve the PUD. Additional facts will be provided below as they become relevant.

## DISCUSSION

### I.     Statutory Framework

There are two paths by which a land use decision made by the County may reach the Board. Counties are permitted to create local Boards of Appeals under the authority of Md. Code (2013, 2013 Repl. Vol.), § 10-305 of the Local Government Article ("LG"). Under that authority, a Board of Appeals "may have original jurisdiction or jurisdiction to review the action of an administrative officer or unit of county government."

9

LG § 10-305(b). The Court of Appeals provided in *Chesapeake Bay Found., Inc. v. DCW Dutchship Island, LLC*, that a county has the "ability to set reasonable conditions precedent to access to its Board of Appeals [as] an exercise of its Home Rule." 439 Md. 588, 604 (2014).

The final approval of a PUD, after the Council approves its continued review, is made by a Hearing Officer (the ALJ), which is subject to review by the Board, if an appeal of the ALJ's decision is filed. The Baltimore County Code ("BCC") provides certain procedures and design requirements for the approval of a PUD. Among other requirements, "[a]n application for approval for a [PUD] shall be submitted to the" appropriate County Council member and include certain content, such as "an explanation of how the site and acreage meet the criteria for the type of [PUD] that is proposed." BCC § 32-4-242(a) & (b). "[C]ommunity residents and organizations may provide written input and comments regarding the proposed development to the Council member" before the Council adopts "a resolution approving the continued review of the [PUD]," assuming all other preliminary community meetings, public postings and notices, and reviews conducted by county agencies are met. *See* BCC § 32-4-242(a)-(c).

Finally, the Council may adopt a resolution approving "the continued review of the [PUD] in accordance with the procedures of" the BCC and county zoning regulations "[i]f the Council finds that the [PUD] will achieve a development of substantially higher quality than a conventional development would achieve and that the proposed site for the [PUD] is eligible for county review." BCC § 32-4-242(d)(1). Further, "[t]he Council may amend

10

or modify the densities or uses in the proposed [PUD] and shall include such amendments or modifications in the resolution adopted under this subsection." BCC § 32-4-242(d)(2).

Next, an ALJ, "conduct[s] a hearing on the PUD development plan in accordance with the provisions of §§ 32-4-227 and 32-4-228." BCC § 32-4-245; *see also* § 32-4-227(a) (providing that "final action on a Development Plan may not be taken until after a public quasi-judicial hearing before a Hearing Officer"). The ALJ must "issue a written decision that approves or denies the PUD development plan and may condition approval on comments contained in the Director's report or otherwise." BCC § 32-4-245(a)(2). The scope of the ALJ's review of the proposed PUD encompasses the PUD's "compliance with the requirements of the Baltimore County Zoning Regulations and the development regulations," including "[t]he height, area, setback, parking, open space, sign and other development and zoning requirements of the underlying zone or district that apply in that portion of the proposed [PUD]." BCC § 32-4-245(b). The ALJ's approval of the PUD development plan may be conditioned on "higher design standards," and the ALJ may "[a]pprove modifications of the applicable requirements of the underlying zone upon a finding that they are necessary to achieve the intent and purpose of [Article 32, Section 4 of the Code]," and "[a]ccept any proposed community benefit and further define its terms." BCC § 32-4-245(b)(3). With the exception of further defining the terms of the community benefit, the ALJ "may not alter the amendments of modifications imposed by the County Council under § 32-4-242(c) or . . . alter the community benefit identified in the Council resolution." BCC § 32-4-245(b)(4).

11

The ALJ's decision "is subject to appeal" under BCC § 32-4-281. *See* BCC § 32-4-245(d). Pursuant to BCC § 32-4-281, "[a] person aggrieved or feeling aggrieved by final action on a Development Plan may file a notice of appeal with the Board of Appeals . . . within 30 days after the date of the final decision of the Hearing Officer." Under this section of the Code, aggrieved persons or persons "feeling aggrieved" entitled to appeal the decision of the ALJ "include[] a duly constituted civic, improvement, or community association," as long as certain circumstances are met. BCC § 32-4-281(a). Those circumstances include when the PUD is either of the following:

> (ii) Of such a nature as to personally and specifically affect, damage, or impact the members of the association in a way different from that suffered by the members of any other associations or in a way different from a general interest such as is the concern shared by the public in general; or

> (iii) Of such a nature or type as to give the members of the association a valid and discernible property interest in the property that is the subject of the Development Plan.

BCC § 32-4-281(a)(2).

Once an appeal of the ALJ's decision to the Board is filed, the Board conducts a proceeding during which it will "[h]ear[] oral argument of the parties" and "[r]eceive[] written briefs, if requested by any party to the proceeding." BCC § 32-4-281(d). Further, "[a]t the Board's discretion, additional evidence and testimony may be allowed." *Id.* At the conclusion of the proceedings before the Board, the Board may proceed according to the following provision:

> The [Board] may . . . "[a]ffirm the decision of the Hearing Officer; or . . . [r]everse or modify the decision of the Hearing Officer if the decision . . . (1) [e]xceeds the statutory authority

12

or jurisdiction of the Hearing Officer; (2) Results from an unlawful procedure; (3) [i]s affected by any other error of law; (4) [i]s unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or (5) [i]s arbitrary or capricious.

BCC § 32-4-281(e)(1).

An appeal of a Board of Appeals decision is properly heard upon a petition for judicial review in the circuit court.[4] *See* Md. Rule 7-202(a). Pursuant to Maryland Rule 7-203(a), "a petition for judicial review of an agency decision shall be filed within 30 days . . . of . . . the date of the order or action of which review is sought . . . ." After a timely petition is filed, "any other person may file a petition within ten days after the date the agency mailed notice of the filing of the first petition, or within the period set forth in section (a), whichever is later." Md. Rule 7-202(b).

We note here an important difference between standing requirements before the Board and standing requirements to bring a petition for judicial review before the circuit court. As the Court in *Sugarloaf Citizens' Ass'n v. Dep't of Env't*, 344 Md. 271, 286 (1996) noted, liberal standing requirements are afforded to those who seek to challenge

---

[4] Maryland Rule 7-201(a) provides, "The rules in this Chapter govern actions for judicial review of . . . an order or action of an administrative agency, where judicial review is authorized by statute . . . ." Additionally, "[a]s used in this Chapter, 'administrative agency' means any agency, board, department, district, commission, authority, commissioner, official . . . or other unit of the State or of a political subdivision of the State . . . ." Md. Rule 7-201(b).

a county agency's decision before the Board of Appeals. [5]  As the Court of Appeals has

previously explained,

> Bearing in mind that the format for proceedings before administrative agencies is intentionally designed to be informal so as to encourage citizen participation, we think that absent a reasonable agency or other regulation providing for a more formal method of becoming a party, anyone clearly identifying himself to the agency for the record as having an interest in the outcome of a matter being considered by the agency, thereby becomes a party to the proceedings.

*Med. Waste Assocs., Inc. v. Md. Waste Coal., Inc.*, 327 Md. 596, 611 (1992) (quoting

*Morris v. Howard Res. & Dev. Corp.*, 278 Md. 417, 423 (1976)).

In *Comm. for Responsible Dev. on 25th Street v. Mayor & Cty. Council of Baltimore* (hereinafter "*25th Street*"), we explained that "the requirements for administrative standing are such that one may have administrative standing, but lack standing to seek judicial review." 137 Md. App. 60, 71 (2001) (citing *Sugarloaf Citizens' Ass'n*, *supra*, 344 Md. at 285–86).  Because the threshold for standing before the Board is relatively low compared to standing requirements to bring a case before the circuit court, we explained that "a concerned citizen or group of citizens may be allowed to argue

---

[5] The holding in *Sugarloaf* has been superseded by statute.  *See* Md. Code (1982, 2007 Repl. Vol., 2010 Supp.), Env't Art., § 5-204(f).  The statute provides an easier path for environmental organizations to establish standing in challenges to environmental permit decisions without being required to show that the organization itself was "aggrieved."  *See Patuxent Riverkeeper v. Md. Dep't of the Env't*, 422 Md. 294, 312-13 (2011) (J. Harrell, dissenting) (describing the prior standing requirements and the statutory changes affording more liberal standing requirements to environmental organizations). In other words, the standing principles articulated in *Sugarloaf* and similar cases continue to apply to land use actions that do not fall within the scope of the statute.

14

against a zoning decision before the Board but not be sufficiently aggrieved to seek judicial review of the Board's decision." *Id.*

In *Sugarloaf*, the Court of Appeals articulated the policy underlying administrative standing requirements in Maryland permitting wide latitude to persons aggrieved or "feeling aggrieved" by county zoning decisions: "The requirements for administrative standing under Maryland law are not very strict. Absent a statute or a reasonable regulation specifying criteria for administrative standing, one may become a party to an administrative proceeding rather easily." *Id.* at 286. Although the Baltimore County Code provides standing requirements for persons who may challenge final decisions of the ALJ, those provisions actually extend, rather than restrict, "person[s] aggrieved or feeling aggrieved" to community associations where the development plan "specially aggrieves" its members. BCC § 32-4-281(a)(2); *see also* § 32-4-281(b) (permitting "person[s] aggrieved . . . by final action on a Development Plan" to appeal the ALJ's decision to the Board "within 30 days after the date of the final decision of the [ALJ]"). Thus, like the petitioner in *25th Street*, a petitioner may find itself with standing to appeal an ALJ's approval of a PUD to the Board of Appeals, but without the requisite standing to petition for judicial review before the circuit court.

## II.   Standard of Review

Whether the circuit court erred when it denied DMS's motion to dismiss is a question of law, which we review *de novo*. *See Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 142 (2012) (quoting *Reichs Ford Rd. Joint Venture v. State Rds. Comm'n of the State*

15

*Highway Admin.*, 388 Md. 500, 509 (2005)). When we consider the circuit court's decision, we bear in mind that:

> [A] court must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff.

*Id.* at 142.

In this case, the circuit court considered testimony from the president of GTC in making its determination that GTC had standing. "When the circuit court considers matters outside the pleadings, the court treats the matter as a motion for summary judgment." *25th Street*, 137 Md. App. at 73-74 (2001) (quoting *Boyd v. Hickman*, 114 Md. App. 108 (1997)). Whether we treat the circuit court's decision as a denial of a motion to dismiss or for summary judgment, however, we review whether the court's decision was correct as a matter of law. *Id.* at 74. More specifically, however, "[a] party's standing to appeal either to this Court or to a circuit court from the decision of a zoning board is a question of law, which we review *de novo.*" *Superior Outdoor Signs, Inc. v. Eller Media Co.*, 150 Md. App. 479, 494 (2003).

## III. The Circuit Court Erred by Denying DMS's Motion to Dismiss Based on Petitioner's Lack of Standing to Petition for Judicial Review of the Decision of the Board of Appeals.

Whether GTC's appeal "is properly before us . . . depends upon whether [GTC] has standing." *Id.* A petitioner's establishment of standing demonstrates "the right of the individual to assert the claim in the judicial forum." *State Ctr., LLC v. Lexington Charles*

*Ltd.*, 438 Md. 451, 517-18 (2014). The Court of Appeals has held that "the claimant alone is responsible for raising the grounds for which his right to access the judiciary system exists." *Id.* at 517 (citations omitted). It is well established in Maryland that, in order to have standing to petition for judicial review, a party must meet "two conditions precedent." *Bryniarski v. Montgomery Cnty. Bd. of Appeals*, 247 Md. 137, 143 (1967); *see also Med. Waste v. Md. Waste*, 327 Md. 596, 611 (1992) (citations omitted) ("In order to be entitled to judicial review in a contested case, one must both be a 'party' to the administrative proceedings and be 'aggrieved' by the final decision of the agency.").

First, a petitioner "must have been a party to the proceeding before the Board."[6] *Bryniarski, supra*, 247 Md. at 143. If he or she participated in the case before the Board, the court's next inquiry is whether the party is "aggrieved" by the decision of the Board. *Id.* at 144. With regard to land use and zoning decisions, we define an "aggrieved party" as "one whose personal or property rights are adversely affected by the decision of the Board." *Id.* Specifically, the consequences of the Board's decision must affect the petitioner specifically, "in a way different from that suffered by the public generally." *Id.*

Property ownership alone does not "provide unfettered access to the courts to citizens unhappy with all actions taken by state or local governing bodies . . . ." *See Anne Arundel County v. Bell*, 442 Md. 539, 576 (2015) (citing *State Center, supra*, 438 Md. at 519) (discussing commonalities between property owner standing and taxpayer standing).

---

[6] Indeed, Maryland Rule 7-202(c)(1)(C) requires a petitioner for judicial review to state in her or his petition "whether the petitioner was a party to the agency proceeding, and if the petitioner was not a party to the agency proceeding, state the basis of the petitioner's standing to seek judicial review."

Because of the requirement that a person's interests must be specially affected, "standing issues are 'determined by the courts on a case by case basis, and the decision in each case rests upon the facts and circumstances of the particular case under review.'" *Ray v. Mayor & City Council of Baltimore*, 430 Md. 74, 90 (2013) (quoting *Bryniarski, supra*, 247 Md. at 144).

Depending on the circumstances, we typically examine the proximity of a person's property to the site for which the zoning decision was made in determining whether an individual is "aggrieved." *See Bryniarski, supra*, 247 Md. at 144; *see also Ray, supra*, 430 Md. at 83. Indeed, the weight attributed to a petitioner's "aggrievement" is most often evaluated by "how close the affected property is to the re-zoned property." *Ray, supra*, 430 Md. at 83. Generally, therefore, "proximity is the most important factor to be considered" in determining whether a protestant is *per se* aggrieved, "where standing to challenge a rezoning action [is] at issue." *Id.* at 82-83.

In *Ray*, following *Bryniarski*, the Court of Appeals reviewed primarily two categories of property owners who have standing to petition for judicial review in zoning cases. *Id.* at 81-83. First, a party is deemed to be "specially damaged," and therefore "*prima facie* aggrieved," if the petitioner owns property that is "adjoining, confronting, or nearby" the rezoned property. *Id.* at 85. A second category includes "a protestant [who] is almost *prima facie* aggrieved when 'she is farther away than an adjoining, confronting, or nearby property owner, but is still close enough to the site of the rezoning action . . . and offers 'plus factors' supporting injury.'" *Bell, supra*, 442 Md. at 559 (quoting *Ray, supra*, 430 Md. at 551-52). Importantly, this additional factor must establish that the petitioner's

18

personal or property rights are "personally and specially affected in a way different from that suffered by the public generally." *Ray*, *supra*, 430 Md. at 81. As the Court of Appeals explained in *Ray*, however,

> [t]here is . . . no bright-line rule for exactly how close a property must be in order to show special aggrievement. Instead, this Court has maintained a flexible standard, finding standing in cases that do not quite satisfy the "adjoining, confronting or nearby" standard of *prima facie* aggrievement, but are nudging up against that line. Protestants in such cases will be considered to pass the standing threshold if they allege specific facts of their injury. In other words, once sufficient proximity is shown, some typical allegations of harm acquire legal significance that would otherwise be discounted. *But in the absence of proximity, much more is needed*.

*Id.* at 83 (emphasis added). In spite of the absence of any "bright-line rule" of proximity, "[t]he category of almost *prima facie* aggrieved protestants has been found in our cases to apply only to those who have lived between 200 to 1000 feet away from the subject property." *Bell*, *supra*, 442 Md. at 559.

Although some have suggested that we recognize "a third, poorly-defined category of protestants," *Ray*, *supra*, 430 Md. at 85, "[a] person whose property is far removed from the subject property ordinarily will not be considered a person aggrieved." *25th Street*, *supra*, 137 Md. App. at 86 (quoting *Bryniarski*, *supra*, 247 Md. at 144-45); *see also Bell*, *supra*, 442 Md. at 576 (noting that, outside of the two primary categories of aggrieved property owners, "protestants are 'generally aggrieved' and do not have standing"). Put differently, to show that one is "aggrieved" and therefore satisfies the second prong of the standing analysis in a judicial review of a land use decision, every petitioner, no matter the

proximity, must demonstrate that he or she is "specially affected in a way different from that suffered by the public generally." *Bryniarski*, *supra*, 247 Md. at 143.

A person or entity who owns property that is "adjoining, confronting, or nearby" the rezoned property, however, may establish its *prima facie* aggrievement by putting forth evidence of the property's proximity to the site in question. *Ray*, *supra*, 430 Md. at 85. All other petitioners have the burden -- which varies in degree based on proximity -- to articulate what sets them apart from the general public. *See Ray*, *supra*, 430 Md. at 89. Notably, "[w]ith the exception of those protestants who are *prima facie* aggrieved, the requirement that an individual prove special aggrievement has been well-established for more than half a century." *Id.*

Particularly important in this case is Maryland's policy relating to "association standing" in land use actions. To have standing to appeal a zoning and land use decision of the Board, a neighborhood or community association itself must be "aggrieved" by the decision of the Board regardless of its members' property ownership. *See Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 205 Md. App. 636, 658 (2012). We have previously articulated that an "association lacks standing to sue where it has no property interest of its own -- separate and apart from that of its members." *Id.* (quoting *Citizens Planning & Hous. Ass'n v. Cnty. Exec. of Baltimore Cnty.*, 273 Md. 333, 345 (1974)).

GTC averred during oral argument and in its briefs that *Long Green Valley* and *Citizens Planning* do not apply to this case because those cases involved "original," equitable actions filed in the circuit court, rather than petitions for judicial review of an administrative decision. Putting aside the parties' academic debate over whether a petition

20

for judicial review is an "appeal" or an "original action," the more important point is that these cases examined the "aggrievement" of associations seeking relief from the circuit court in land use actions. *Id.* at 683–84 ("Appellants argue that they have standing because . . . some of LGVA's members reside in the area of Bellevale Farm. Thus, appellants will be "specially harmed" by the creamery operation in a manner different from the public."). We have already explained that due to the liberal standing criteria before the Board, a party may have standing before the Board but lack standing to petition for judicial review in the circuit court. *See 25th Street*, *supra*, 137 Md. App. at 71. Additionally, we explained *supra* that principles in *Bryniarski* apply to determine standing in challenges to "land use decisions." *See State Center*, *supra*, 438 Md. at 524. "[A] land use decision is a decision (typically an ordinance or regulation) enacted or promulgated by a legislative or administrative body for the purpose of directing the development of real estate." *State Center*, *supra*, 438 Md. at 524 (citation omitted). We, therefore, apply *Bryniarski* principles of property owner standing to determine whether GTC is "aggrieved" by the Board's land use decisions "separate and apart from that of its members." *Long Green Valley*, *supra*, 205 Md. App. at 658.

This very concept underlies the similar policy that an individual member of a neighborhood association is not 'aggrieved' for the purposes of standing before the circuit court simply because another member of the same neighborhood owns property that "adjoin[s], confront[s], [is] nearby" the property at issue. *Ray*, *supra*, 430 Md. at 81. The Court in *Ray* addressed this principle specifically -- that residents of a neighborhood

21

generally cannot assert standing by virtue of the aggrievement of the neighborhood's other members -- providing the following:

> Creating a bright-line rule, under which each person in the entire neighborhood qualifies as a member of the specially aggrieved class in every PUD case, as Petitioners propose, would be tantamount to abandoning the *Bryniarski* rule that the facts and circumstances of each case would govern.

*Ray*, *supra*, 430 Md. at 90.[7]  The Court elaborated this concept in the following passage:

> We agree with Respondents that the creation of a class of aggrieved persons is done on an individual scale and not based on delineations of city neighborhods. *See* [*Marcus v. Montgomery Cnty. Council*, 235 Md. 535, 538 (1964)] . . . ; *see also* [*Dubay v. Crane*, 240 Md. 180, 183 (1965)] ("[I]n addition to showing the proximity of one property to the other, [standing] requires proof of the adverse effect the changed status of the rezoned property has, or could have, on the use, enjoyment and value of the property of the protestant in order to establish the status of the appellant as an aggrieved person.").

*Id.* at 88-89.

As the Court explained in *Bryniarski* and in *Ray*, the *petitioner* seeking review of a zoning decision in the circuit court must be specifically affected.  *See Bryniarski*, *supra*, 327 Md. at 144; *Ray*, *supra*, 430 Md. at 89.  As we noted above, the Baltimore County Code and general administrative standing policy in Maryland may afford standing before the Board to associations in some circumstances, even when its own property ownership interests are not at stake. *Med. Waste*, *supra*, 327 Md. at 611. Before the circuit court,

---

[7] The Court in *Ray* added in a footnote, "This is not to say that there can never be a case where an entire neighborhood is aggrieved.  But no facts, specific to this case, have been presented which show that the entire neighborhoods of Remington and Charles Village are specially aggrieved."  430 Md. at 90 n. 12.

however, a neighborhood or community association, itself, must own property that is "adjoining, confronting, or nearby" the subject property to be "*prima facie* aggrieved" by the Board's decision. *Long Green Valley*, *supra*, 205 Md. App. at 658; *Ray*, *supra*, 430 Md. at 85.

If not "*prima facie* aggrieved," the association must, therefore, allege and prove special circumstances or "plus factors" demonstrating that the association will be harmed differently from the general public. *See Bell*, *supra*, 442 Md. at 558 (citations omitted) (discussing the additional criteria for "almost *prima facie* aggrieved" property owners). An association with no property interests near the subject property, or an association that owns property verging on that standard of proximity but is not "aggrieved" differently than the general public, lacks standing to appeal a zoning decision made by the Board. *See Long Green Valley*, *supra*, 205 Md. App. at 658; *Bryniarski*, *supra*, 247 Md. at 144. When a case reaches such a procedural posture, therefore, the property interests of an association's members have no bearing on the standing of the larger association. Our task is to now apply these well-established principles to the circumstances of the case *sub judice*.

### A. As a Community Association Not "Aggrieved" by the Board's Decisions, GTC Did Not Have Standing To Petition the Circuit Court for Judicial Review.

At the consolidated hearing, before denying DMS's motions to dismiss GTC's petition for judicial review and reviewing the merits of both the PUD approval case and the open space waiver case, the circuit court found that GTC had standing to petition for judicial review in both cases. The court's decision was based, in part, on GTC's participation as a party before the Board in both cases. Additionally, the circuit circuit

23

considered, secondarily, that one of GTC's member neighborhood association members owned a community park and garden somewhat near the 101 York PUD. With respect to the open space waiver case specifically, the circuit court found that GTC had a strong interest in DMS's payment of a higher waiver fee because of the benefits it could bring to GTC's member neighborhoods in Baltimore County.

With respect to GTC's standing in the open space waiver case, the circuit court's assumption of GTC's standing due to its interest in the benefits that payment of a waiver fee would bring to its neighborhood association members throughout the Towson area overlooks the central requirement that the petitioner's interests must be affected differently than the general public. *See Ray*, *supra*, 430 Md. at 90 (reiterating the principle that the appellate court "examine[s] the specific facts alleged to show aggrievement . . . and compare[s] that injury to harm suffered by the general public"). Without having any property ownership of its own, GTC, was required to overcome the difficult burden alleging and proving how the Board's decision in the open space waiver case harmed GTC differently than others in the community. *See Bell*, *supra*, 442 Md. at 570 (citations omitted). There is no evidence in the record, however, that GTC was "specially aggrieved" by the decision to permit the zero dollar waiver fee any more than the general public -- including all resident property owners in Baltimore County.

Next, we address the circuit court's attribution of standing to GTC in both cases due to GTC's participation as a party before the Board. As the circuit court recognized in this case, once a petitioner's status as a party before the Board is established, the court should inquire into whether the petitioner is an "aggrieved" person. As we have already explained,

24

typically, the court accomplishes this by examining the petitioner's property ownership and its proximity to the site in question. GTC, however, does not own any property near the 101 York PUD; indeed, GTC does not own any property in Maryland. Moreover, GTC is a combination of various neighborhood associations, rather than a neighborhood or community association with individual resident members. Thus, GTC is even further removed from any aggrievement caused by the Board's decision to individual resident property owners than in other cases involving neighborhood associations. GTC, therefore, was not an "aggrieved" party based on the property interests of any of the individual resident members of the neighborhoods, which were, in turn, members of GTC.

GTC did provide evidence, through the testimony of GTC's President, that one of its several neighborhood association members owns a community park and garden approximately 200 to 300 feet away from the PUD. Nevertheless, that neighborhood association member is no different than an individual residential member of a community association who owns property within the same proximity. In both situations, to have standing, the association must, itself, be "aggrieved" by the Board's decision and cannot rely on its members' property ownership or interests. Put simply, the ownership interests of the members of an organization and those of the broader organization are not one in the same.

Maryland's traditional standing requirements to challenge a land use decision in the circuit court are purposefully specific -- the party challenging the decision must have been a party before the Board and must, itself, be "aggrieved" and affected differently than the general public. *See Bryniarsky*, *supra*, 247 Md. at 143-44. These principles ensure that, if

25

anyone chooses to do so, only persons or entities with interests at stake in the outcome may challenge the Board's land use decision before the circuit court. Because GTC did not put forth any evidence of its own property ownership, nor that it was specially aggrieved in some other way consistent with *Bryniarski*, the circuit court erred in denying DMS's motions to dismiss GTC's petitions for judicial review in both cases.

The circuit court in this case attempted to permit GTC to pursue its challenge to the Board's zoning decisions based on its sense of the fundamental fairness implications at stake. Although we appreciate the circuit court's logic in finding that GTC should have had some path to review of the Board's decision because GTC was a party before the Board, the low threshold for standing before the Board in Baltimore County conflicts with the standing principles controlling a party's ability to challenge a land use decision in the circuit court. Had American Legion continued to pursue its petition for judicial review, the court would have been required to reach the merits of the case, as GTC's lack of standing before the circuit court would not have impeded its ability to participate. Unfortunately for GTC, however, its participation as a party before the Board was not enough; to have standing to petition for judicial review before the circuit court, GTC was required to show that it was "aggrieved" by the Board's decision.

**B.    The Circuit Court Erred in Granting Two Motions to Intervene in the PUD Approval Case.**

Next, we address whether the circuit court erred when it granted Towson Lubrication's, Keplinger's, and Kilcullen's motions to intervene, and whether the involvement of those parties into the case provided at least one party with standing to

26

pursue the petitions for judicial review in the PUD approval case. In most cases, we review a circuit court's decision to grant or deny a motion to intervene based on an abuse of discretion standard. *See Sipes v. Bd. of Mun. & Zoning Appeals*, 99 Md. App. 78, 88 (1994). In this case, however, we have already determined that the circuit court found incorrectly that GTC -- the only remaining party in the case when the motions to intervene were filed -- had standing to pursue the appeal before the circuit court. Importantly, whether a justiciable case exists at the time a motion to intervene is made is a significant consideration in the court's decision to allow or deny the motion. We provided the following analysis in *Sipes*:

> Although the issue of standing may not be jurisdictional in nature, . . . it does go to the very heart of whether the controversy before the circuit court is justiciable . . . . If the controversy is nonjusticiable, it should not be before the circuit court, and therefore must be dismissed.

99 Md. App. at 87-88 (citations omitted); *see also id.* at 94 (citing federal authority for the rule that "[i]ntervention presupposes the pendency of an action in a court of competent jurisdiction"). We concluded, "[a]s a logical extension of this rule, a party cannot intervene in an action where none of the original parties to that action has standing." *Id.* at 94-95 (citing *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965)).

Because the circuit court's determination of whether GTC had standing, and therefore whether a justiciable controversy existed into which the applicants could intervene, we review whether the circuit court erred as a matter of law in granting the motions to intervene. Notably, the intervenors were not parties in the Board proceedings and filed their motions more than thirty days after the Board's decision. Citing *Sipes*, DMS

27

argues that the circuit court should have denied the motions to intervene because GTC -- the only existing petitioner when the motions were filed, did not have standing and the motions were not timely. GTC responds that *Sipes* is inapplicable because the organizations in that case did not dispute that they did not have standing, whereas here, GTC makes no such concession.[8]

We agree with DMS that *Sipes* is determinative on the issue regarding the motion to intervene.[9] In *Sipes*, environmental organizations timely appealed the decision of the zoning board, which approved a salvage company's application "for alteration of an existing conditional use of a junk yard." *Id.* at 80. Three organizations appealed the zoning board's decision to the Circuit Court for Baltimore City. The salvage company responded by filing a motion to dismiss. Before the circuit court ruled on the motion, and sixty-eight days after the decision of the zoning board, Sipes filed a motion to intervene and joined the organizations' amended petition for judicial review. The salvage company filed a second motion to dismiss, and the circuit court granted Sipes's motion to intervene and denied the motion to dismiss. Thereafter, the circuit court remanded the case back to the zoning board for a new hearing. *Id.* at 80-81.

---

[8] In addition, GTC argues that it had standing, unlike the organizations in *Sipes*. Further, GTC avers that the motions to intervene were timely in this case because the motions were filed within thirty days of American Legion's voluntary dismissal, which removed the only party that could adequately represent the intervenors' interests in the case.

[9] Further, the facts that required the circuit court to deny the motions to intervene are even more compelling in this case. Whereas in *Sipes* the intervenor would have had standing to appeal on her own if the appeal had been timely, the intervenors in this case were not parties before the Board and, therefore, did not.

28

Upon appeal to this Court, we considered whether the circuit court abused its discretion by granting the motion to intervene, which was filed more than thirty days after the zoning board's decision. Under these circumstances, we noted that where "the Organizations did not have standing, and as they were the only party plaintiffs, the court should have dismissed the appeal." *Id.* at 95. We held "that the circuit court erred when it entertained the appeal from the Board because the Organizations did not have standing to appeal and Sipes could not intervene after the running of the thirty day period for taking an appeal." *Id.* at 85. Further, we distinguished, specifically, other cases in which a party was permitted to intervene where either the current party on the side upon which the party sought to intervene had standing, *see Department of State Planning v. Mayor of Hagerstown*, 288 Md. 9, 12-13 (1980), or where the intervenor, herself, had standing and could have brought the petition or suit on his or her own. *See Benning v. Allstate Ins. Co.*, 90 Md. App. 592, 598-99 (1992) (holding that a motion to intervene was permitted, even though the intervenor filed her motion eighteen days before trial, where the intervenor herself could have brought an independent action to seek the same relief, as she was within the two-year statute of limitations commencing on the date of her automobile accident).

This case, however, presented even greater obstacles to intervention. First, the only existing party petitioning the circuit court for judicial review when Towson Lubrication, Keplinger, and Kilcullen sought to intervene did not have standing. In this case, the legal correctness of the circuit court's decision to grant the motions to intervene in the PUD approval case depended, in part, on whether GTC had standing to pursue the petition. Had the court's finding of standing for GTC been correct, for instance, whether the newly

29

admitted parties had standing to appeal on their own would have been irrelevant, as the circuit court typically need not concern itself with the standing of other parties where "one party qualifies as 'specially aggrieved.'" *State Center, LLC V. Lexington Charles Ltd. P'ship*, 438 Md. 451 (2014) (quoting *Long Green Valley*, *supra*, 205 Md. App. at 652).[10]

We held in *Sipes* that one path to overcoming the only existing petitioner's lack of standing is to show that the intervenor could have initiated a petition for review on her own. *See Sipes*, *supra*, 99 Md. App. at 99 (citing *Benning*, *supra*, 90 Md. App. 592, 598-99). In *Sipes*, when the motions to intervene were filed, "the period for appealing the Board's decision had already expired," and therefore, the intervenors could not have brought their own appeal at that time. *Id.* at 98. Notably, the circumstances in *Sipes* are similar to the situation GTC and the intervenors find themselves in here. As we explained *supra*, after the American Legion dismissed its appeal of the Board's decision, no party with standing remained in the PUD approval case[11] to pursue the petition for judicial

---

[10] In *State Center*, the Court of Appeals held that:

> In this analysis, Appellees need only allege sufficient facts that at least one of them qualifies as "specially aggrieved" because " '[w]here there exists a party having standing to bring an action or take an appeal, we shall not ordinarily inquire as to whether another party on the same side also has standing.' " *Long Green Valley Ass'n,* 205 Md. App. at 652, 46 A.3d at 483 (quoting *Bd. of License Comm'rs v. Haberlin,* 320 Md. 399, 404, 578 A.2d 215, 217 (1990)).

438 Md. at 527.

[11] We note that GTC was the only remaining petitioner in both the PUD approval case and the open space waiver case at the time of the motions to intervene; Towson

review. Because Towson Lubrication, Keplinger, and Kilcullen sought to intervene well after the time within which to bring an appeal of the Board's decision, and none had participated as a party before the Board, none of the three could have brought a petition before the circuit court on his or her own.

GTC argues, on behalf of Towson Lubrication, Keplinger, and Kilcullen, however, that the circuit court had the discretion to grant the motions to intervene because the motions were filed within thirty days of American Legion's voluntary dismissal of its case. Additionally, GTC argues that the motion was timely pursuant to Maryland Rule 2-214, because American Legion was the only party that could adequately represent the intervenors' interests. Indeed, GTC avers that GTC could not have adequately represented their interests because GTC "is a community association that cannot, itself, suffer a loss of the value of its property or business." More importantly in this case, however, is the second obstacle for the motions to intervene.

The determinative obstacle for Towson Lubrication's, Keplinger's, and Kilcullen's motions to intervene has implications both for the court's ability to grant the motions to intervene as well as for the permissibility of the petition to properly go forward. In addition to the fact that their motions to intervene came well after the thirty-day period for petitioning for judicial review, Towson Lubrication, Keplinger, and Kilcullen did not participate as parties in the Board proceedings in the PUD approval case. As we have

Lubrication, Keplinger, and Kilcullen, however, maintained their motions to intervene, and the circuit court granted the motions, in the PUD approval case only.

31

explained, the first of the two requirements to establish a party's standing to petition for judicial review is participation as a party before the Board. *See Bryniarski*, *supra* 247 Md. at 143; *see, e.g.*, *Shore Acres Improvement Ass'n v. Anne Arundel Cnty. Bd. of Appeals*, 251 Md. 310, 317-18 (1968) (holding that an association's President, who was not a party before the Board of Appeals, was not entitled to appeal the Board's decision granting a zoning application that his association had opposed in the Board proceedings).

Accordingly, even if we assumed *arguendo* that the decision to grant the motions to intervene fell within the court's discretion and the motions were properly granted, the intervention would not have authorized the filing of a petition for judicial review by a party with standing. In other words, even after the circuit court permitted Towson Lubrication, Keplinger, and Kilcullen to intervene, none of the petitioners challenging the Board's decision had standing to pursue the petition before the circuit court. The outcome, therefore, is the same.[12] They were not permitted to enter the proceedings at the circuit court level after the thirty-day limitations period where the only remaining petitioner in the case had no standing to pursue an appeal of the Board's decision, and the intervenors were not parties before the Board.

For all of these reasons, the circuit court erred when it granted the motions to intervene. Regardless of the circuit court's decision to grant the motions to intervene,

---

[12] Because of our holding on the issue of GTC's standing and the inability of Towson Lubrication, Keplinger, and Kilcullen to intervene in the PUD approval case, we need not examine whether the evidence in the record established any "special aggrievement" based on the proximity of the intervenors' properties to the 101 York PUD. As previously mentioned, the aggrievement of the intervenors based on the proximity of their properties was not a significant issue before the circuit court.

however, no petitioner (or intervenor) had standing to pursue the petitions for judicial review of the Board's decisions when the circuit court decided the merits in both cases. Although the practical outcome of our decision is no different than the circuit court's affirmance of the Board's decisions in both cases, the circuit court erred when it denied DMS's motions to dismiss, granted the motions to intervene in the PUD approval case, and addressed the merits of both the PUD approval case and the open space waiver case.

Because of our holding on the issue of standing, we need not address the merits of either the PUD approval case or the open space waiver case. Accordingly, we vacate the judgment of the circuit court and remand the case to the circuit court to grant DMS's motion to dismiss. The Board of Appeals' decisions, with no properly "aggrieved" party capable of challenging its rulings, therefore, stand in both cases.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED. CASES REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH INSTRUCTIONS TO DISMISS THE PETITIONS FOR JUDICIAL REVIEW. COSTS TO BE PAID BY APPELLANT.**

33